DENNIS BURNHAM, APPELLANT, V.
CAROLYN BURNHAM, APPELLEE.

304 N.W.2d 58

Filed April 3, 1981. No. 43447.

Steven Lefler for appellant.

John S. Slowiaczek of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE and HASTINGS, JJ..

HASTINGS, J.

Dennis Burnham has appealed from an order of the District Court for Douglas County dissolving the marriage of the parties and awarding custody of their only daughter, Jaime (referred to in the decree as Jamie), to the mother, Carolyn Burnham. Appellant has assigned the following as error: (1) The court erred in placing permanent custody of the child with the mother; (2) The court erred in assessing child support in the amount of $300 to be paid by the father, such amount being clearly excessive; (3) The court erred in not allowing into evidence a video tape regarding the Tridentine Church; and (4) The court erred in overruling the motion for new trial. For the reasons to follow, we reverse the order of the District Court.

The parties were married on December 19, 1975, in Omaha, Nebraska, at St. Bernard's Catholic Church. One child was born to this union on October 2, 1976, a daughter, Jaime Burnham. Dennis is employed by the Union Pacific Railroad and grosses $19,000 per year. Carolyn works as a bookkeeper for her father and grosses $9,000 per year. The parties purchased a home during the marriage, which was awarded to Carolyn and then sold by her to Dennis. The trial court made the factual finding that both parties are fit and proper persons to be awarded the care and control of the minor child.

Most of the evidence at trial focused on the religious differences between the parties, and these differences appear to be the reason for the dissolution and custody fight. Dennis was originally a Lutheran, who converted to Catholicism so that they could attend church as a family. In approximately August of 1978 Carolyn became interested in a sect calling itself the Tridentine Church, or the Fatima Crusaders. Carolyn was encouraged to get involved in the group by her parents, and her interest intensified over the next several months. Carolyn encouraged Dennis to get involved and attend meetings. However, he refused to do so. It was

this religious disagreement that Dennis blames for beginning the problems the parties were having in their relationship. In December of 1978 Dennis learned that Carolyn and her parents did not consider that the marriage of the parties was legitimate, and that they were therefore living in sin. The reason that the marriage was not considered legitimate was that they were not married in the Fatima Crusader Church. Because of her view of her marriage, Carolyn testified that she did not consider her child to be legitimate.

Carolyn also adheres to the belief that as a member of the Tridentine Church she is bound under pain of mortal sin to educate her child in the Tridentine Church, which is considered to be the true Catholic Church by its members. It is the teaching of the church that if Carolyn did not send Jaime to a Tridentine parochial school, and it was within her power to do so, then she would be excommunicated. The church's school is in Coeur d'Alene, Idaho, where Carolyn would like to send Jaime when she is of school age and it would be financially possible to do so. One of the exhibits was a copy of the general regulations of the school and its statement of principle, including a release to be signed by the parents. The release gives full permission for the use of strict discipline and corporal punishment. It then relieves the academy, all of the teachers and school personnel, various religious leaders, and the property owners, of all responsibility for the child in case of accident or injury or any unforeseen mishap.

In a letter that Carolyn wrote to her sister-in-law, she stated: "What surprised me the most, in finding out about true Catholicism, I have discovered that there exists in this world, a master plot on the part of the Jews and Communists, to gain control of the world." This points out the anti-Semitic views that Carolyn believes are being taught by the Tridentine Church and which she testified that she believed to be true.

The evidence shows that Carolyn's parents are members of the Tridentine Catholic Church, and three

of their children are attending a Tridentine school in Spokane, Washington. One of their children, Jim, age 23, who apparently does not adhere to the same religious beliefs, has been denied communication with the family. Carolyn testified on cross-examination that she agreed with her parents not being in communication with her brother. In fact, she returned a toy to Jim that he had sent as a gift to Jaime.

Carolyn testified as follows: "Q. If Jaime did the same thing, if Jaime did not believe at the age of 14 or 15 the tenets of the Tridentine Catholic Church, would you do to her what your parents are doing to Jim? A. If she disobeys the laws of the Church, I would. Q. No room for flexibility, then? A. The laws of the Church are the laws of the Church. Q. Thank you, that's answering it. Do you anticipate that in every parent-child relationship there is going to be times of conflict? A. Yes. Q. And even though that's a natural parent-child relationship, if she disobeys the rules of the Church, you are willing to cut her off from your life? A. If Jaime does what Jim did, yes. Q. If Jaime disobeyed the laws of the Church? A. Depending on which law, how it would affect me. That's too vague. Q. That's certainly possible? A. Possible what? Q. It's possible that you could cut her off from your life? A. If she married somebody that was divorced, yes."

The appellant argues that it was error for the District Court to place the custody of Jaime with Carolyn rather than with him. This case is one of equity and is reviewed de novo. "Where the issue of child custody is involved, both the mother and father have an equal and joint right to the custody of their children. The test for determining custody, which has been reiterated by this court many times, is the best interests of the child." *Theye v. Theye*, 200 Neb. 206, 207, 263 N.W.2d 92, 94 (1978).

Neb. Rev. Stat. § 42-364(2) (Reissue 1978) states: "In determining with which of the parents the children, or any of them, shall remain, the court shall not give

preference to either parent based on the sex of the parent and no presumption shall exist that either parent is more fit to have custody of the children than the other."

On a review de novo, the parents begin with an equal right to have custody; there can be no preferences based on the sex of the parent nor are there any presumptions that one parent is more fit than another. *Meysenburg v. Meysenburg, ante* p. 456, 303 N.W.2d 783 (1981). From this base, we must then consider the evidence presented at the custody hearing to determine with which parent it would be in the best interests for the child to remain. As previously noted, the trial court found, and we agree, that both parents are fit and proper persons to have custody of Jaime.

"The courts preserve an attitude of impartiality between religions and will not disqualify a parent because of his or her religious beliefs." *Goodman v. Goodman*, 180 Neb. 83, 88, 141 N.W.2d 445, 448 (1966). However, we do have a duty to consider whether such beliefs threaten the health or well-being of the child. *Goodman, supra.* See, generally, Annot., 66 A.L.R.2d 1410 (1959). Of primary consideration is the welfare of the child, and the court must consider not only the spiritual and temporal welfare but also the minor's further training, education, morals, and the ability of the proposed guardian to best take care of the child. *Kaufmann v. Kaufmann*, 140 Neb. 299, 299 N.W. 617 (1941).

"A court's task in a child custody case is to determine which parent will better serve the best interests of the child. Myriad factors may be considered in working toward this goal. To hold that a court may not consider religious factors under any circumstances would blind courts to important elements bearing on the best interests of the child." *Bonjour v. Bonjour*, 592 P.2d 1233, 1238 (Alaska 1979).

Also considering whether it is appropriate for a court to consider religion as part of the best interests equation

was the Superior Court of Pennsylvania in *Morris v. Morris*, 412 A.2d 139, 142 (Pa. Super. Ct. 1979): "[B]oth the weight of authority and established legal principles support the proposition that it is legitimate for a court to examine the impact of the parents' beliefs on the child."

We believe that the following beliefs may have an adverse impact on Jaime: (1) The belief that she is illegitimate; (2) The willingness of Carolyn to cut Jaime out of her life if she disobeys the rules of the Tridentine Church; and (3) The racist views held by Carolyn and, apparently, by her church. Although by holding these views Carolyn has not disqualified herself from being a fit and proper person to have custody of her child, we must take all factors into consideration in determining what is in Jaime's best interests. We also note that Carolyn's desire to educate Jaime in the Tridentine school in Coeur d'Alene, Idaho, would interfere with the father's rights of visitation. There is ample evidence that the father is very close to his daughter. He has the ability and desire to take care of her in the family home. He has stated that he will look after her moral and religious training and enroll her in a Sunday school or something equivalent.

We feel that Carolyn's religious beliefs, if continued in regular practice, which she indicates will be the case, will have a deleterious effect not only on the relationship between the father and his daughter but upon the well-being of the child herself. Accordingly, we find that it would be in the best interests of Jaime to place her in the permanent custody of her father, with reasonable visitation rights by the mother.

We therefore reverse the order of the District Court awarding custody to the mother, and remand the cause with instructions to award custody to the father, Dennis Burnham. Carolyn is ordered to pay child support to Dennis in the amount of $50 per month, and will be allowed reasonable visitation.

REVERSED AND REMANDED WITH INSTRUCTIONS.