LYNN WILLIAM METTENBRINK, APPELLANT, v. BILLIE JO METTENBRINK, APPELLEE.

371 N.W.2d 310

Filed August 2, 1985.   No. 84-861.

William E. Naviaux and J. Patrick Green, for appellant.

Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, and Shanahan, JJ.

White, J.

This is an appeal by the petitioner below, Lynn W. Mettenbrink, from an order of the district court for Hall County denying his application to modify a decree of dissolution and give him primary custody of the child, Trent William Mettenbrink. We affirm the district court's decision.

On June 23, 1981, the district court for Hall County entered a decree dissolving the marriage of Lynn W. Mettenbrink and Billie Jo Mettenbrink. During their marriage, the parties had one child, Trent, born November 19, 1977. In its decree dissolving the marriage, the district court found that both the mother and father were "fit and proper persons to have custody of the minor child of the parties." Accordingly, the court, pursuant to an agreement entered into by the parties, divided custody of the child between the parties as follows:

> Custody of the minor child of the parties, Trent William Mettenbrink, is awarded to Petitioner during the months of June, July and August of each year with Respondent to have visitation one day a week and also from Friday evening through Sunday evening on the second and fourth week-ends of each month during such period, and to the Respondent during the months of September through May of each year with Petitioner to have the right of visitation with said child one day each week and also from Friday evening through Sunday evening on the first and third week-ends of each month during said period. In addition, the parties may by mutual agreement arrange for such other visitation as may be reasonable under the circumstances.

The agreement reached by the parties and approved by the

court was satisfactory until the fall of 1983. At that time Trent started attending kindergarten. The parties agreed that it would be in the best interests of the child to end weeknight visitations with his father in favor of visitation on every weekend.

On February 13, 1984, dissatisfied with the divided custody arrangement, the father petitioned the district court to modify the decree of dissolution, alleging that circumstances had materially changed since the decree was entered and that it would be in the best interests of the child to have physical custody transferred to him.

A hearing on the matter was held on April 4 and continued until April 19. Before the latter date the court was notified that the parties had apparently reached another agreement concerning the child's custody; however, in August of 1984 both parties' counsel requested that the matter be allowed to proceed. On September 6, after 2 days of testimony, the district court entered its order finding no change in circumstances but modifying its earlier decree by reducing the father's 3-month summer custody of the child to 1 month of summer visitation, and ordered that custody of the child remain with the mother, subject to every other weekend visitation with the father.

In light of the court's earlier order awarding the respective parties "divided custody" of the child, we find its present order to be inconsistent. Regardless of this finding, however, as in any action seeking modification of a trial court's order as to custody of a child,

> this court must, on appeal, review de novo the trial court's determination with regard to whether a change of circumstances has occurred which justifies the modification of the earlier custody order. We are required to make independent conclusions of fact without reference to the conclusion reached by the trial court, but we will give weight to the fact that the trial court observed the witnesses and has accepted one version of the facts rather than the opposite.

*Walton v. Walton, ante* p. 625, 625-26, 371 N.W.2d 292, 293 (1985); *Boll v. Boll,* 219 Neb. 486, 363 N.W.2d 542 (1985). Further, in cases involving custody disputes, our paramount concern, as well as that of the parties, should be and is the best

interests of the child. *Boll, supra.*

As a general rule, orders fixing custody of minor children will not be modified unless there has been a change of circumstances indicating that the person who has custody is unfit for that purpose or that the best interests of the child require such action. *Dunne v. Dunne,* 211 Neb. 636, 319 N.W.2d 741 (1982). The best interests of the child include, but are not limited to, the general health, welfare, and social behavior of the child. Neb. Rev. Stat. § 42-364(1)(c) (Reissue 1984).

Our de novo review of the record reveals that there has been a change of circumstances in this case, primarily concerning the future welfare and present social behavior of the child.

Since the Mettenbrinks were divorced, Trent has at various times been subject to the control of several different adults. Following their divorce, both his mother and father heavily relied on extended family for additional support and care of Trent. Both parties have since remarried, leaving Trent at times also under the control of his new stepmother and stepfather, not to mention aunts, uncles, and babysitters.

In the spring of 1983 Trent began to evidence some behavior problems, e.g., temper tantrums and exhibiting belligerent, uncooperative, and argumentative conduct. Concerned about his child's behavior and the effects the split custody arrangement was having on Trent, Lynn Mettenbrink consulted with a child psychologist, Dr. Michael O'Neill.

At the hearing Dr. O'Neill testified that Trent is a child who exists on two different levels. Trent was described not only by Dr. O'Neill but by several other witnesses as a charming, bright, and attractive child. However, Dr. O'Neill testified that socially and emotionally Trent has the potential of developing severe problems, so much so that Dr. O'Neill described the child as a "sociopath in training." Trent, as the doctor testified,

> has superficial kinds of attachments with many, many people, but no genuine sense of allegiance to anyone except himself.
>
> He spends a great deal of his time protecting himself, watching out for what's coming. He's learned to play the system that he's been put into very well, very effectively,

but guards himself real carefully. Emotionally, is not about to invest . . . too much of himself in any person or any thing.

The doctor further testified that such behavior was not uncommon in a child who has been shifted about from place to place and person to person. Although the child senses love from each of the adults in his life, "he's very, very careful . . . not to do or say anything that will antagonize any of those people in his life. He's a master at pleasing people."

After testing the child and observing his behavior, Dr. O'Neill recommended to Mr. Mettenbrink that Trent's life be made as normal and regular as possible and that the child be allowed to put down roots. Trent's father tried to carry out Dr. O'Neill's suggestions but never informed Trent's mother of his consultation or the child's problems.

We believe that the divided custody arrangement in this case is a major factor in the child's emotional problems. These problems have thus created a change in circumstances which demand that the decree be modified. We are therefore left, as the district court was, with the difficult task of choosing which of two fit and proper parents should be given primary custody of the child.

At the hearing, witnesses for both parties testified that the mother and father are equally qualified as parents. Regarding the mother, the record shows that after the divorce she went through a period of adjustment. She moved several times, between family members, and changed employment at least three times. She also returned to school to begin a nursing career, which has been postponed indefinitely pending the outcome of this dispute. She also actively participated in and enjoyed several sports. The mother remarried May 19, 1984. She and her new husband currently reside in the husband's house in the city of Grand Island.

The father is a farmer engaged in a family farming operation north of Grand Island. He remarried on May 25, 1984. His wife is also previously divorced, with two children. Trent appears to have developed a very close relationship with his stepsiblings. Trent's father wishes to have his child grow up in a rural environment, as he did, and to pass along the family farm to

him. The father and his new family now reside in an older farmhouse left to the father by a family member.

The parents thus offer the child two different lifestyles, one based in the city and the other in the country. Our choice of one parent or the other is not to be seen as an endorsement or preference for either way of life. Neither has any preference been given to either parent on the basis of the sex of the parent. *Burnham v. Burnham*, 208 Neb. 498, 304 N.W.2d 58 (1981).

In our judgment the best interests of the child dictate that he be left in the custody of the mother, with reasonable rights of visitation in the father, as ordered by the district court. Although the record does show that following the divorce the mother's lifestyle was somewhat erratic, it does not indicate to us severe signs of instability as petitioner-appellant would have us believe. Our decision is based primarily on the child's need to be allowed to place some roots. The father admirably provided a very healthy, happy environment for his child during the summer of 1984, in which he had custody. However, since that time, following the court's modification of custody, the child has been in the primary care of the mother. Therefore, we do not feel that it would be in Trent's best interest to uproot him again and return him to his father. The child needs a sense of security and an understanding of the word "home."

We agree with the district court's provisions for visitation and its recommendation that the parents cooperate in any further psychological therapy the child may need to ensure his healthy growth.

AFFIRMED.

GRANT, J., not participating.