LAWRENCE E. VON TERSCH, APPELLEE AND CROSS-APPELLANT, V.
GERALDINE A. VON TERSCH, APPELLANT AND CROSS-APPELLEE.

455 N.W.2d 130

Filed May 4, 1990.   No. 89-776.

Lorin C. Galvin for appellant.

James S. Jansen, of Stave, Coffey, Swenson, Jansen & Schatz, P.C., for appellee.

Kelly K. Duncan for amicus curiae Rutherford Institute of Nebraska.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

Shanahan, J.

In this appeal from the district court for Douglas County, which dissolved the marriage of Geraldine A. Von Tersch and Lawrence E. Von Tersch, Geraldine Von Tersch (Geri), as custodial parent, contends that the district court erred in (1) requiring that the parties' minor children attend a public school rather than a private school of Geri's choice and (2) awarding insufficient child support, distributing the parties' marital property, allocating debts, awarding an inadequate attorney fee for Geri's lawyer, assessing Geri with the costs of the eventual sale of the parties' residence, and charging the gross marital estate with the costs of a psychological child custody evaluation. Lawrence Von Tersch (Larry) cross-appeals, contending that the district court erred in granting Geri custody of the Von Tersch minor children and in ordering Larry to refrain from drinking alcoholic liquor in relation to visitation of his children.

Von Tersches were married in November 1964 and have four children from their marriage. Only two of the Von Tersch children are legally affected by the dissolution proceedings, namely, Kurtis and Kyle, twin boys born May 17, 1980. During the early years of the marriage, Larry earned a degree in physical education in 1967 and, after graduation, taught high school physical education from 1967 through 1973, although his teaching career was interrupted by 1 year's military service in Vietnam. Eventually, Larry became a high school head football coach and physical education instructor, but in 1984 left teaching and joined the sales force for an Omaha-based corporation. At the time of trial, Larry had an annual gross salary of $37,000 as a senior account representative.

When Larry and Geri married, Geri worked as a medical assistant and secretary at Physicians Clinic, but took time off regarding the birth of the two oldest Von Tersch children. In 1979, Geri went to work as a secretary and receptionist and earned approximately $4.50 per hour, but, due to complications in her pregnancy with the Von Tersch twins, had to leave her secretarial-receptionist job. Since the twins' birth, Geri has not been employed outside the Von Tersch home. However, at the time of trial, Geri worked full time as a volunteer secretary and

teacher's aide at the grade school attended by the Von Tersch twins and received no compensation for her services at the twins' school. Throughout the marriage, Geri was mainly responsible for rearing the Von Tersch children.

The Von Tersch marital estate included a southwest Omaha residence, which was valued at $62,500 and was subject to a $20,000 mortgage. Von Tersches also owned 2 acres of land in rural Douglas County, which was sold for $9,300 some 3 weeks before the dissolution trial. Other assets included a money market account, a 401K plan with Larry's employer, an IRA account, stock and various insurance policies, two automobiles, and miscellaneous household goods and furnishings.

Prior to trial in the marital dissolution proceedings, the Von Tersch family had attended a Catholic church fairly regularly until 1978, when they began going to various Protestant churches. In 1986, Geri commenced attending services at the Sword of the Spirit Church and enrolled the Von Tersch twins in kindergarten at the church's school, a "private Christian school" which had as its primary purpose "to train the student in the Christian way of life and to give the student a good general education." Although Larry and Geri do not share the same religious beliefs, the dissimilarities of their religions are not a major source of controversy between the couple. After Larry returned to the Catholic church in May 1988, the parties alternated the twins' church attendance, that is, one Sunday Larry took the boys to his church, and the following Sunday Geri took them to her church. Neither party objects to this arrangement, which exposes the twins to both the Catholic faith and Geri's religious beliefs.

Geri and Larry experienced various difficulties, such as problems arising from Larry's drinking and gambling activities. On at least five occasions, professional counselors suggested that Larry seek treatment for his drinking problem. Geri expressed concern about Larry's drinking in the presence of the twins, particularly when he was driving the car in which the twins were riding. Larry regularly attended races at horse or dog tracks.

Geri and Larry differed in their views on rearing and

disciplining the twins, and also disagreed about the twins' participation in sports, especially when Geri balked at the boys' playing soccer. As a former physical education teacher, Larry felt that the twins' participation in sports was very important to their development and, consequently, encouraged and coached the twins in baseball, soccer, hockey, and basketball.

The couple attended marriage counseling, but their marital problems persisted. In September 1985, Larry filed a petition for dissolution of his marriage to Geri. The court entered a temporary order that the parties have joint custody of the children. Nevertheless, Larry and Geri continued to live together in the family residence and attempted to reconcile their differences. Despite a provision in the temporary order that attendance at a public school was in the twins' best interests, Geri wanted the twins to attend Sword of the Spirit school. Larry, however, believed that the boys would be better off in a public school. "[T]o make the marriage workable," Larry acquiesced in Geri's wishes for education of the twins.

Sword of the Spirit school is a small private school operated in urban Omaha. Although the school was founded in 1981 and was state approved, after adoption of "Rule 13" of the Nebraska Department of Education's regulations and procedures in 1984, the school elected to become exempt from state approval or accreditation requirements and standards, an exemption authorized by 92 Neb. Admin. Code, ch. 13, § 003.01 (1984), and Neb. Rev. Stat. §§ 79-1701 et seq. (Reissue 1987) which, generally, provide for exemption from state accreditation or approval requirements, such as certification requirements for teachers in private, denominational, and parochial schools.

Children attending the Sword of the Spirit school are taught in small classes, consisting of approximately 12 students. The school has 14 teachers, some of whom are teachers certified by the state, while others are not. Teachers assigned for the Von Tersch twins held valid teaching certificates. The school's academic program follows traditional approaches to education with a wide range of subjects. The kindergarten curriculum consists of language arts, science, and arithmetic. For first grade and succeeding grades, the curriculum, in addition to the

aforementioned kindergarten subjects, includes history, geography, health, safety, and manners. All classes engage in daily Bible study. At the time of trial, the Von Tersch twins were in the third grade, with satisfactory performance in their studies.

In 1988, the court appointed a guardian ad litem for the Von Tersch twins and ordered a comprehensive child custody evaluation, which was rendered by Joseph L. Rizzo, a clinical psychologist. The custody evaluation included interviews with Geri and Larry, psychological evaluations of the parents and the twins, and psychoeducational testing of the twins by a certified school psychologist. Dr. Rizzo described the twins as "very socially conscious, precocious, challenging, and seem to have the capability of generating a wide variety of interests."

Regarding the Sword of the Spirit school and the needs of the twins, Dr. Rizzo stated:

[T]he strong focus on academic basics [at the school] will have a very limiting effect as these children are not the Above Average children who can self teach themselves. They, themselves, tend to be in need of structure, guidance and active teaching, in which The Sword of the Spirit School is limited. Additionally, not having any supplemental programs in place as of this date in Art, Physical Education, Reading, Shop, Special Ed as well as not having any laboratory, Science or Laboratory Math courses compounds and generates a sense of awkwardness and potential vulnerability for the children.

Dr. Rizzo believed that Geri "takes responsibility of the children extremely seriously," but indicated that she minimizes the twins' needs to be with their peers or to have time to themselves. Dr. Rizzo stated that, while Larry admits a history of drinking and gambling, he tended to downplay the importance or effect of those activities on his marriage and family, and was "manifesting an untreated alcohol abuse reaction and . . . approaching the bounds of a problem area in regard to his gambling." Regarding the relationship between the parents and the twins, Dr. Rizzo indicated that the twins are very close to both Geri and Larry, and are very troubled by the divorce.

The court granted Geri custody of the twins, subject to Larry's right of visitation concerning the twins. Regarding visitation, the court ordered that Larry refrain from drinking alcohol for the 4 hours preceding any visitation during which he would operate a motor vehicle in which the twins would be passengers. Larry was ordered to pay child support of $300 per month per child and alimony of $300 per month for 121 months. Geri was ordered to register the boys in the Millard public school system for the school term beginning in the fall of 1989. Out of the $9,300 in proceeds from the sale of the rural land in Douglas County, $2,450 was set aside to pay Dr. Rizzo's fee and the fee of the guardian ad litem. Geri was awarded the family residence, subject to the existing mortgage, plus an IRA account and the 1988 state and federal income tax refunds. According to the court's division and distribution of Von Tersches' marital estate, Geri's share of the estate was valued at $36,411, while Larry's share was valued at $36,340. Larry was granted a lien on the family residence for $9,612, which represented his share of the net equity in the Von Tersch residence and which was due and payable on occurrence of any of several events, including emancipation of the minor Von Tersch children. In lieu of interest assessed on account of deferred payment of Larry's share of the residential equity, Geri bore the costs of any eventual sale of the Von Tersch residence.

## STANDARD OF REVIEW

In an appeal involving an action for dissolution of marriage, the Supreme Court's review of a trial court's judgment is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Huffman v. Huffman*, 232 Neb. 742, 747-48, 441 N.W.2d 899, 903-04 (1989). See, also, *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990); *Ensrud v. Ensrud*, 230 Neb. 720, 433

N.W.2d 192 (1988).

## COURT-ORDERED EDUCATION IN
## A PUBLIC SCHOOL

In the dissolution decree pertaining to child custody, the court ordered Geri to register the Von Tersch twins "in and have them attend a school in the Millard Public School System, commencing in the Fall of 1989, and continue in said school system thereafter until further order of the Court." Geri contends this order infringes on her rights under the first amendment, namely, her freedom of religion, see U.S. Const. amend. I, and refers to *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972), *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925), and *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), which, when read together, support the constitutional principle that a state cannot interfere with a parent's liberty interest to direct the upbringing of the parent's child or children, including educational and religious instruction, in the absence of jeopardy to the child's health, safety, or significant social concerns. See, also, U.S. Const. amend. XIV (no state shall deprive any person of life, liberty, or property without due process of law).

While Geri points out the constitutional limitations on a state's interference with parents in the religious upbringing of their children, we do not believe that the Von Tersch case rises to the level of a question about a parent's constitutionally protected right concerning religious training or upbringing of the parent's child. Larry does not object to his sons' attending Sword of the Spirit school and receiving religious instruction at the school. Rather, Larry's disapproval of the school is based on the school's physical structure, lack of state certified teachers, and the absence of supplemental classes, such as physical education, art, music, industrial arts, and computer programming. As previously noted, although Larry and Geri have "religious differences," neither complains that the twins' exposure to the differing parental religions has a deleterious or detrimental effect on the health, safety, or well-being of the twins. Also, Larry expresses no disagreement about or

disapproval of daily Bible study by the twins as students at Sword of the Spirit school, or instruction emphasizing Bible-based principles. The district court concluded that the issue of the twins' education was determined by the best interests of the twins, independent of any consideration based on religion or religious belief. The language in the custody provision of the dissolution decree indicates that public school attendance was ordered for secular reasons only. From our de novo review of the record, we find no first amendment issue arising from the district court's order for education of the Von Tersch twins.

The issue remains, however, whether the district court abused its discretion in ordering that the twins attend public school, rather than private school, against the wishes of the custodial parent, Geri. Courts of most jurisdictions take the view and, therefore, espouse the principle that when parents in a marital dissolution proceeding disagree about the course of their child's education, a court should decline to enter an order directing the child's education and should leave the child's education to a determination by the custodial parent in the absence of unusual circumstances or a showing that the child's health, safety, or well-being are, or will be, endangered by the parental decision concerning the child's education. See, *Griffin v. Griffin*, 699 P.2d 407 (Colo. 1985) (control over a child's education remains in the custodial parent in the absence of a showing that the parental decision on education causes mental or physical harm to the child); *Majnaric v. Majnaric*, 46 Ohio App. 2d 157, 347 N.E.2d 552 (1975) (child custody implies that the custodial parent has the immediate personal care and control of the child, including the right to determine what school the child will attend); *Selby v. Selby*, 124 N.E.2d 772 (Ohio App. 1952) (generally, a court has limited power to restrict the custodial parent's choice of a school to be attended by the child); *Fanning v. Warfield*, 252 Md. 18, 248 A.2d 890 (1969) (in a marital dissolution proceeding, child custody, in the absence of some extraordinary or highly unusual circumstances, includes the right of the custodial parent to make decisions about the child's education); *Mester v. Mester*, 58 Misc. 2d 790, 296 N.Y.S.2d 193 (1969) (the nature and extent

of a child's education is a value judgment committed to the custodial parent, whose decision may be subject to judicial interference on an affirmative showing that the parental decision injures the child); *Zande v. Zande*, 3 N.C. App. 149, 164 S.E.2d 523 (1968) (custodial parent determines what education the child will have); *Bateman v. Bateman*, 224 Ga. 20, 159 S.E.2d 387 (1968) (child custody includes corresponding privileges, such as the right to decide what educational advantages children shall receive); *Montandon v. Montandon*, 242 Cal. App. 2d 886, 52 Cal. Rptr. 43 (1966) (a custodial parent is permitted to select the religious, cultural, and educational forum of the child), *overruled on other grounds, In re Marriage of Schiffman*, 28 Cal. 3d 640, 620 P.2d 579, 169 Cal. Rptr. 922 (1980); *Jenks v. Jenks*, 385 S.W.2d 370 (Mo. App. 1964) (the right of a custodial parent to direct a child's training and education, whether religious or secular, is contained within custody itself and should be free from court interference unless the court is convinced that the welfare of the child demands judicial intervention); *Kritzik v. Kritzik*, 21 Wis. 2d 442, 124 N.W.2d 581 (1963) (educational decisions for a child are left to the custodial parent).

The rationale for the preceding principle regarding a custodial parent's determination with respect to a child's education is abundantly clear: As a matter of practicality, a court, being somewhat a stranger to both a child and the parent in a marital dissolution proceeding, is usually ill equipped to fully comprehend and act astutely on the varied and exact but everyday needs of the child and, therefore, should not substitute judicial judgment for that of the custodial parent who selects schooling or education for the child. See *Griffin v. Griffin, supra*. As stated in *Jenks v. Jenks, supra* at 377:

> Courts are not so constituted as to be able to regulate the details of a child's upbringing. It exhausts the imagination to speculate on the difficulties to which they would subject themselves were they to enter the home or the school or the playground and undertake to exercise on all occasions the authority which one party or the other would be bound to ascribe to them. Considerations of the most practical kind, therefore, dictate that in these cases the duty of

attending to the details of the child's rearing be delegated to a custodian, and, as an indispensable concomitant of the appointment, that the custodian be vested not only with commensurate authority but with that degree of discretion upon which the expeditious exercise of authority invariably depends. It must be presumed in the absence of a contrary showing that the custodian, whether he be the child's parent or a stranger, will discharge his duties with fidelity and good judgment.

We have previously stated that a custodial parent in a marital dissolution proceeding normally has the right to control the religious training of a child legally affected by the proceeding unless there is a demonstrated serious threat to the health or well-being of the child. *Goodman v. Goodman*, 180 Neb. 83, 141 N.W.2d 445 (1966). See, also, *Burnham v. Burnham*, 208 Neb. 498, 304 N.W.2d 58 (1981); *Kaufmann v. Kaufmann*, 140 Neb. 299, 299 N.W. 617 (1941), *overruled on other grounds, Lakey v. Gudgel*, 158 Neb. 116, 62 N.W.2d 525 (1954). The aforementioned rule regarding a custodial parent's determination of a child's religion provides an analogue for a similar rule concerning a child's education. Accordingly, we hold that a custodial parent in a marital dissolution proceeding may determine the nature or extent of the education for a child legally affected by the dissolution proceeding unless there is an affirmative showing that the custodial parent's decision has injured or harmed, or will jeopardize, the child's safety, well-being, or health, whether physical or mental.

In Von Tersches' case, Dr. Rizzo indicated that continued attendance at the Sword of the Spirit school would reduce the twins' opportunity for social interaction and competition, to the extent that they may "tend to perceive themselves as being perhaps more qualified and competent than they truly are." However, none supplied evidence that Sword of the Spirit school in any way adversely affects the Von Tersch twins' physical or mental health and well-being. Although the argument is made that a public school, with numerous extracurricular activities, elaborate science labs, sports facilities, and computer sciences, provides more opportunities to a student than does Sword of the Spirit school, we decline to

evaluate the relative educational merits of the schools or school systems. While it is possible that the twins' social progression might be enhanced through public school education, there has been no evidentially demonstrated harm, actual or likely, to the twins' safety, well-being, or health, either physical or mental, from their continued attendance at Sword of the Spirit school. Therefore, the evidence does not establish that the Sword of the Spirit school has, or will have, a detrimental effect on the Von Tersch twins.

> [A] judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

*State v. Juhl*, 234 Neb. 33, 43, 449 N.W.2d 202, 209 (1989). See, also, *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988); *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985).

In the case now before us, the trial court abused its discretion by intruding upon the right of a custodial parent to determine the nature and extent of educating a child for whom the parent has been granted custody. Accordingly, we reverse the district court's judgment that the Von Tersch twins must be educated in a public school.

## OTHER ASSIGNED ERRORS

Regarding Geri Von Tersch's contention that the court abused its discretion regarding child support, alimony, property division, and fees in the proceedings, we have conducted a de novo review of the district court's judgment and conclude that, regarding the matters just mentioned, Geri Von Tersch has failed to establish that the district court abused its discretion. Hence, the district court's judgment regarding child support, alimony, property division, and fees is affirmed. See, *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988) (amount of child support is discretionary with the trial court); *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990) (child custody and amount of alimony are discretionary with the trial court); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986) (nature

of property division is discretionary with the trial court); *Smith v. Smith*, 222 Neb. 752, 386 N.W.2d 873 (1986) (allowance and amount of a guardian ad litem fee are discretionary with the trial court).

## CROSS-APPEAL

In his cross-appeal, Larry Von Tersch argues that the district court erred in awarding custody of the minor children to Geri, and in ordering Larry to refrain from drinking intoxicating beverages for the 4 hours preceding a visitation during which Larry would be operating a motor vehicle in which the Von Tersch twins would be passengers.

When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. . . .

. . . .

. . . [N]either parent is presumed to be more fit than the other or granted custodial preference on the basis of gender.

*Ritter v. Ritter, supra* at 210-11, 450 N.W.2d at 210-11 (1990).

In determining a child's best interests in custody matters, a court may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child.

*Christen v. Christen*, 228 Neb. 268, 271-72, 422 N.W.2d 92, 95 (1988). See, also, *Ritter v. Ritter, supra*.

No dispute exists concerning the fitness of Geri or Larry Von Tersch as a parent. The district court found that both parties were fit to have custody of the Von Tersch children, but that the best interests of the children warranted custody in Geri, subject to Larry's visitation of the children. Both parents have a close relationship with the twins. "In determining whether a noncustodial parent will have visitation rights and the nature of such visitation rights, the best interests of a child are the primary and paramount consideration by a court." *Gerber v. Gerber*, 225 Neb. 611, 618, 407 N.W.2d 497, 502 (1987). In view of the extent of Larry's use of alcohol, the district court's requirement that Larry's visitation of his children be liquor-free is not an abuse of discretion by the trial court. Consequently, the district court did not abuse its discretion in granting child custody to Geri Von Tersch or in imposing a restriction on the child visitation by Larry Von Tersch.

## CONCLUSION

For the reasons given above, that part of the district court's judgment requiring that Geri place Kurtis and Kyle in Millard Public Schools is reversed, but the judgment of the district court in all other respects is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.

BOSLAUGH, J., dissenting in part.

The record shows that both the guardian ad litem and the psychologist, Dr. Rizzo, were concerned about the continued attendance of the children at the Sword of the Spirit school.

It was the opinion of the psychologist that if the children continued to attend the Sword of the Spirit school, "their performance would need to be monitored on a yearly basis to see if they are in fact continuing to acquire 'the basics'." He further stated that if the children did leave the Sword of the Spirit school to go into a standard junior high school, "they will probably have a very difficult time because they will be substantially behind in the social and emotional and will need at least one to two years to shift into the public school system."

In view of this evidence, it seems to me that the trial court did not abuse its discretion in finding that it was in the best interests of the children to attend a public school and in ordering the

respondent to register the children in the Millard public school system commencing in the fall of 1989.