MARSTON L. DOOLITTLE, APPELLANT, V. MARY BETH DOOLITTLE, APPELLEE.

525 N.W.2d 245

Filed December 13, 1994.   No. A-94-340.

Ronald A. Ruff, of Ruff, Nisley & Lindemeier, for appellant.

Lori A. Zeilinger for appellee.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

The petitioner, Marston L. Doolittle, filed an application asking the court to modify a previously entered dissolution decree to require the respondent, Mary Beth Doolittle, to enroll the parties' minor children in the public school system or, in the alternative, to award him custody of the minor children. After a hearing, the trial court denied the petitioner's application, but ordered the respondent to ensure that the minor children comply with the compulsory school attendance laws of Nebraska as administered by the Perkins County superintendent of schools. The petitioner appeals to this court. Upon a de novo review, we conclude that the trial court did not abuse its discretion, and we therefore affirm.

## BACKGROUND AND FACTS

The parties were married May 3, 1970, in Denver, Colorado. For approximately 20 years they lived on a farm near North Platte, Nebraska. Between May 31, 1971, and August 2, 1989, 10 children were born to them. At the time of the divorce on October 24, 1990, 10 of these children were minors. At the time of the modification hearing on March 9, 1994, three of the children were adults, one was 17 years of age, and the two youngest were 4 and 6 years of age.

When they married, the parties were members of the Episcopal Church. Thereafter, they did not renew their membership in that church and did not attend any church for a number of years. The respondent attended church occasionally and in later years attended more frequently and attempted to provide some religious education for the children in the home. The petitioner attended church only occasionally on Christmas Eve and resisted the religious education for the children in the home.

The petitioner is 57 years of age. He was disabled after coming into contact with a high voltage powerline. As a result, the family is principally supported by Social Security disability benefits. He testified that he is currently attending college, but did not state where.

The respondent is 47 years of age and had attended 1 year of college before attending and completing nursing school. She is a registered nurse, but the record does not show when she last practiced.

During the parties' marriage, the children attended home school, apparently in compliance with the wishes of both parents. Within a year after the divorce, the respondent joined the Church of God in Christ, Mennonite. The respondent currently lives approximately 3 miles northwest of Grant in a home that members of the church helped her find.

The court appointed a guardian ad litem in response to the application for modification of decree filed on behalf of the petitioner. The guardian ad litem's report was admitted into evidence without objection. This report shows that the branch of the Mennonite church the respondent belongs to believes that an eighth grade education is the maximum extent to which a person should be educated in a school setting. Five of the Doolittle children currently attend the Golden Plains School in Madrid, Nebraska. This school is organized under the church and was founded in 1981. The current school building was erected in 1990. According to the guardian ad litem's report, there are approximately 45 students enrolled in this school. The school provides an education through the eighth grade. The children in this school usually finish the eighth grade when they are approximately 14 years of age. Golden Plains is an exempt

school under rule 13 of the State Department of Education (92 Neb. Admin. Code, ch. 13 (1984)).

The guardian ad litem reported that by all accounts, Golden Plains is a good school that is teaching a curriculum required by the State Department of Education. The report stated that the younger Doolittle children are doing well in school as shown by their performance on the standardized tests that are required by the State of Nebraska. The report also stated that the older Doolittle children's test results revealed that they were behind when they were first enrolled in Golden Plains, but that they are catching up. The report further stated that the guardian ad litem spoke with the Perkins County superintendent of schools, who said that the school is doing a good job of educating children through the eighth grade.

The respondent testified that in her view, children should be educated through the eighth grade, with further education being up to the individual child. She does not believe the education provided by the public school system would be good for her children's religious faith because it teaches subjects such as evolution and sex education. She also thinks her children's peers in the public schools would be a bad influence due to their bad language, conduct, and disrespectful attitude. She feels the atmosphere of the public school might endanger her children's Christian faith. In addition, she believes that further education, such as that required for professions, endangers the likelihood that a person will lead a Christian life. She believes that a Christian should live a life of humble service and that education beyond the eighth grade leads a person to become self-promoting with a goal of getting as high as possible on the ladder of success. She believes this goal interferes with the Christian approach to life. She realizes that education through only the eighth grade deprives her children of some opportunities, but she believes the young people of her faith who have been educated in such a manner make a very adequate living. She admits she does not encourage further education, but testified she has no objection to her children's obtaining further education if they so choose.

The petitioner formerly favored home schooling, but now thinks home schooling is wrong, particularly since his older

children dropped out of school at age 15 with no encouragement to continue their education. His testimony indicates, but does not clearly state, that he objects to his children being indoctrinated in the Mennonite faith. He wants his children to attend public school because he now thinks it is "pretty decent."

The petitioner has visitation rights on the first and third weeks of each month in the summertime and on the first and third weekends of each month during the rest of the year. Much of the evidence relates to difficulties the petitioner has with his children's desire not to visit him. However, no issues on visitation were litigated or appealed, and therefore, evidence of the difficulties with visitation will not be summarized in this opinion.

There is no claim that the children are not bright and happy children. The record indicates the children are respectful to their parents, hard working, and have never been in trouble. The petitioner admits to being proud of them. Mark, who is 22 years of age, is married and employed by a farmer near Grant. He has received an education through the eighth grade at home by his mother and by teachers and has been working on his GED. He lived with his father for a year after the divorce. Martin, who is 19 years of age, works in construction, earning $6.75 per hour. He has taken a welding course since finishing the eighth grade and is a member of the Mennonite church. He still lives with his mother. Molly is age 20 and now lives in Kansas, working in a nursing home. Minnie is 17 years of age and is working as a waitress. Elkana is 16 years of age and finished the eighth grade the year before the hearing. He works for the same construction crew as his brother Martin and receives $5 per hour. He also lives with his mother. Miranda is 13 years old and is in the seventh grade. She has also joined the Mennonite church.

## TRIAL COURT'S ORDER

The trial court denied the petitioner's application, except that it required the respondent to ensure that the minor children comply with the compulsory attendance school laws of the State of Nebraska as administered by the Perkins County

superintendent of schools.

## ASSIGNMENTS OF ERROR

Marston assigns four errors. However, two of these errors are merely arguments and his explanation of how the alleged errors occurred. The properly assigned errors are (1) that the court abused its discretion by failing to require the respondent to enroll the children in an accredited high school or by changing the custody to him and (2) that the court abused its discretion in failing to order the children to continue their education past the minimum statutory age of 16.

## STANDARD OF REVIEW

On appeal, an application for modification of a decree of dissolution is reviewed de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *Snodgrass v. Snodgrass*, 241 Neb. 43, 486 N.W.2d 215 (1992); *Eisenmann v. Eisenmann*, 1 Neb. App. 138, 488 N.W.2d 587 (1992).

## DISCUSSION

In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972), the U.S. Supreme Court held that members of the Amish faith were exempt from mandatory education past the eighth grade due to their strongly held religious belief that education beyond the eighth grade was an absolute threat to their faith and to their community. The petitioner argues that the respondent's Mennonite faith does not clearly hold that children should not be educated beyond the eighth grade. Therefore, unlike the Amish, the respondent's desire not to promote her children's education past the eighth grade is based on mere personal preference. On that basis, the petitioner argues that the respondent is not entitled to constitutional protection for her desire not to promote the children's education past the eighth grade. This argument is simply not applicable to the situation before this court. This is not an action by the state to enforce the compulsory attendance law, but is an action between parents based on the best interests of their children.

This case is controlled by the holding in *Von Tersch v.*

*Von Tersch*, 235 Neb. 263, 272, 455 N.W.2d 130, 136 (1990), which stated the following:

> We have previously stated that a custodial parent in a marital dissolution proceeding normally has the right to control the religious training of a child legally affected by the proceeding unless there is a demonstrated serious threat to the health or well-being of the child. *Goodman v. Goodman*, 180 Neb. 83, 141 N.W.2d 445 (1966). [Other citations omitted.] . . . Accordingly, we hold that a custodial parent in a marital dissolution proceeding may determine the nature or extent of the education for a child legally affected by the dissolution proceeding unless there is an affirmative showing that the custodial parent's decision has injured or harmed, or will jeopardize, the child's safety, well-being, or health, whether physical or mental.

Under these two closely related rules, the only questions before this court are whether there is a demonstrated serious threat to the health or well-being of the children by raising them in the Mennonite faith and whether there is an affirmative showing that the custodial parent's decision on the nature and extent of the children's education has injured or harmed or will jeopardize their safety, well-being, or health, whether physical or mental.

The evidence in this case in no way supports a finding that the religious training selected by the respondent is a serious threat to the health and well-being of the children. We think it is inappropriate to attempt to judge whether the system of values recognized by the respondent as a member of the Mennonite faith is either more or less beneficial to the parties' children than any other religious persuasion. Clearly there is no evidence in the record on this case that would support a finding that the Mennonite faith is a demonstrated threat to the health and well-being of the parties' children.

The petitioner did not attempt to make any showing that the educational practices espoused by the respondent are in any way detrimental to the children. Rather, the petitioner relies upon statements espoused by various courts which recognize the importance of education, such as *Brown v. Board of*

*Education*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954); *Owens v. Heckler*, 753 F.2d 675 (8th Cir. 1985); and *Jenks v. Jenks*, 385 S.W.2d 370 (Mo. App. 1964). The petitioner argues that in our society, education beyond high school is considered to be desirable. The members of this court and most people would agree with this proposition. However, such an argument does not constitute "an affirmative showing that the custodial parent's decision has injured or harmed, or will jeopardize, the children's safety, well-being, or health, whether physical or mental" that is required under *Von Tersch, supra*.

Indeed, as compared to the home school the children attended while the parties were married, the record supports a finding that the older Doolittle children's education improved after they started attending the Golden Plains School.

The petitioner argues that the situation in this case is distinguished from the situation in *Von Tersch*. He argues that in *Von Tersch*, the Supreme Court was comparing the education of a private school with that of a public school, whereas in the case at hand, we are essentially comparing the children's attending a public school with their not attending any school beyond the eighth grade. In making this argument, the petitioner ignores the part of the rule laid out in *Von Tersch* that states the custodial parent may determine "the nature or extent of the education for a child." The extent of the education refers to the length of time the child attends school. Unless the parent does not adhere to the compulsory school attendance laws of this state, the parent is complying with the law and is entitled to make that selection.

In considering this matter, it is well to remember that the evidence shows that some of the children have chosen to become members of the Mennonite church and therefore presumably subscribe to that church's belief regarding the nature and extent of a person's education. The trial court ordered the respondent to comply with the compulsory school attendance laws of the State of Nebraska. She did not appeal that part of the decision; thus, it is final.

The trial court did not abuse its discretion in this case, and its decision is therefore affirmed.

AFFIRMED.