IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

URBAN V. URBAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JODI LYNN URBAN, APPELLEE,

V.

RANDALL SCOTT URBAN, APPELLANT.

Filed October 3, 2017.    No. A-16-1162.

Appeal from the District Court for Polk County: RACHEL A. DAUGHERTY, Judge. Affirmed in part, and in part vacated.

Hannah C. Sommers, of Slowiaczek, Albers & Astley, P.C., L.L.O., for appellant.

Scott D. Grafton, of Grafton Law Office, P.C., L.L.O for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

INTRODUCTION

Randall Scott Urban appeals and Jodi Lynn Urban cross-appeals from a modification order by the district court for Polk County, which, among other things, modified Randall's parenting time with their minor child and authorized Jodi to suspend Randall's parenting time in the event Randall violates any term of the modified parenting plan. Because we find that the district court erred in granting Jodi authority to suspend parenting time, we vacate this provision of the order. Finding no abuse of discretion by the court in the remaining modification order, we affirm in all other respects.

- 1 -

## BACKGROUND

### DECREE OF DISSOLUTION

Randall and Jodi were married in December 2003 in San Diego, California. The couple have one child, Wyatt, who was born in July 2004. Randall and Jodi were divorced pursuant to a decree of dissolution entered by the district court on December 5, 2012. The decree granted the parties joint legal custody and awarded Jodi primary physical custody of Wyatt, subject to Randall's parenting time. The agreed-upon parenting plan granted Randall parenting time on alternating weekends from Friday after school until Sunday at 7:00 p.m., every Wednesday from 3:30 p.m. until 8:15 a.m. the following morning, alternating Monday and Thursday evenings from 3:30 p.m. until 8:00 p.m., alternating holidays, and alternating weeks of parenting time during the summer months. Wyatt was 8 years old at the time of the decree. Randall and Jodi have resided in Osceola, Nebraska at all times relevant to the decree and the current appeal.

### CRIMINAL HISTORY AND COMPLAINT TO MODIFY DISSOLUTION DECREE

On January 22, 2016, Jodi filed a complaint to modify the decree and a motion for ex parte order to suspend parenting time. The complaint claimed a material and substantial change in circumstances since entry of the dissolution decree, in part on the basis of Randall's subsequent criminal history.

In June 2014, Randall was arrested, charged with DUI, and later convicted of reckless driving. Wyatt was present in the vehicle during this arrest. Randall testified that his blood alcohol content was within the margin of error, which led to reduction of the charged offense.

In May 2015, Randall was stopped for driving 92 m.p.h. in a 60 m.p.h. zone, with Wyatt in the vehicle. Randall was cited for speeding, but not convicted of this offense as the result of completing a STOP class.

In September 2015, Randall was stopped after officers observed him driving onto a highway on-ramp going the wrong direction, driving off the road, and then reentering the road. His vehicle struck a road sign and a couple metal posts. Randall was charged and convicted of DUI.

In December 2015, Randall was again arrested for DUI, along with flight to avoid arrest and willful reckless driving. An officer observed his vehicle swerve, and followed the vehicle in his police cruiser. The vehicle began to accelerate, and ran through a highway intersection at a high rate of speed. The officer then activated the cruiser's overhead lights. The vehicle continued at a high rate of speed, ran through a stop sign at another intersection, then went off the road and became stuck. Randall was charged and convicted of DUI. Wyatt was not present in the vehicle during the latter two incidents leading to DUI convictions.

In January 2016, as a result of his DUI convictions, Randall received a 45-day jail sentence in the county jail. Pursuant to a plea agreement, Randall was allowed to serve his sentence through house arrest. Randall did not wish to be considered for probation because it would have occurred during planting season, interfering with his farming obligations. Randall spent nights at the jail, with work release occurring from 8:00 a.m. until 7:00 p.m. each day. The motion for ex parte order

requested Randall's parenting time be suspended until his release from jail. Randall later testified that he would not have entered the plea agreement had he known that Jodi would act to block visitation with Wyatt during the sentence.

In her complaint to modify, Jodi also claimed Randall does not provide a suitable environment for weekday parenting time, as a result of Randall routinely taking Wyatt to bars, and Wyatt not completing schoolwork while in Randall's care. She claimed Wyatt is exhausted after weekday visits as a result of being taken to a bar and not getting to bed on time. Jodi asserted that Randall has a serious problem with alcohol, which endangers Wyatt.

On January 25, 2016, the court entered an ex parte order suspending Randall's parenting time until release from jail or further order of the court.

On April 1, 2016, Randall filed an answer admitting to the two DUI convictions and speeding incident. The answer denied the remaining allegations, and requested dismissal of the complaint to modify. Randall thereafter filed responses to Jodi's requests for admissions, wherein Randall admitted to driving while intoxicated since entry of the decree, driving a vehicle while intoxicated with Wyatt as a passenger, driving 92 m.p.h. in a 60 m.p.h. zone with Wyatt as a passenger, and being arrested or charged with at least three separate instances of DUI since entry of the decree.

### TEMPORARY ORDER

On April 6, 2016, the court entered a temporary order upon a joint stipulation of the parties. Randall was ordered not to consume alcohol prior to or during any parenting time, not to take the child to any establishment where alcohol is served during parenting time, and to provide proof to Jodi that he has not consumed alcohol prior to picking up and returning the child for parenting time. The order also set forth that during Randall's mid-week parenting time during the school year, the child shall not be off his property after 8:00 p.m. Furthermore, Randall was directed to ensure the child makes it to school on time and is properly rested. Lastly, the temporary order provided Jodi authority to suspend Randall's parenting time in the event Randall violates any terms of the order.

### MODIFICATION HEARING

On November 2, 2016, the modification hearing was held before the district court. Wyatt was 12 years old at the time of this hearing. Jodi presented the testimony of Natasha Weller, Jodi's adult daughter; Deputy Prokupek; Deputy Bottorff; Sergeant Allen; and Randall. Jodi also testified on her own behalf. Deputy Prokupek, Deputy Bottorff, and Sergeant Allen provided testimony regarding Randall's driving infractions, as presented above. Randall offered the testimony of Dana Kirby, who coaches youth sports with Randall; and Jenny Neujahr and Connie Borouch, Randall's older sisters.

Exhibits admitted at trial consisted of Offense/Incident Reports regarding the September and December 2015 DUI arrests; Randall's responses to Jodi's interrogatories, requests for production of documents, and requests for admissions; Wyatt's Osceola Public Schools report card dated October 2016; citation and compliant regarding the May 2015 speeding incident; Jodi's proposed parenting plan; and text message communications.

Testimony during the trial primarily centered upon the traffic incidents and allegations of Randall violating terms of the temporary order. Such claims focused on Randall taking Wyatt to establishments where alcohol is served during parenting time, and Wyatt being at these establishments during mid-week parenting time, during the school year, after 8:00 p.m.

Randall acknowledged agreeing to not take Wyatt to drinking establishments during parenting time and not allow Wyatt off his property after 8:00 p.m. during mid-week visitation. However, Randall testified that he did not know how long the temporary order was to last, believing the order was only in place for the rest of the prior school year. Randall did not dispute taking Wyatt to a bar from 8:56 p.m. until 10:19 p.m. on May 4, 2016, a Wednesday during the school year. Randall also confirmed going to a different bar from 7:48 p.m. until 9:45 p.m. on October 26, 2016, another Wednesday during the school year. After a brief stop at Randall's home that evening, Randall and Wyatt then went to another bar, from 10:21 p.m. until 11:30 p.m., not returning home until around 11:45 p.m. Randall testified that they were accompanied by a couple and their two boys during this evening. The dates and times of these occurrences were determined through an application on Wyatt's cell phone installed by Jodi, which traces the location of Wyatt's phone.

Randall explained that he would take Wyatt out to eat during parenting time, sometimes after 9:00 p.m., claiming this was the only available time as a result of working long, late hours on the farm, specifically, running the combine. Randall testified that all the local restaurants are also drinking establishments, with the exception of a Dairy Queen, which Wyatt does not like. He explained the bars were "about the only place where people go and meet" in the area. Randall testified that he and Wyatt go to these bars during parenting time to purchase food, either from the establishment or delivered, not to drink. Randall indicated that Wyatt would meet up with his friends at one of the local bars to play, or on occasion to use the internet for homework. Randall also took Wyatt to a restaurant in Omaha on a couple Wednesday evenings, when it is more affordable. Randall does sometimes stop at the local convenience store or Dairy Queen to grab something to eat after picking Wyatt up from school.

Randall believed Wyatt being with him in the evenings is just as good as Wyatt being at home alone past 8:00 p.m., as he claims occurs during Jodi's parenting time. He claimed she would leave him to go to work or the bar during the evening. The court asked Randall if he felt it appropriate for Wyatt to be out late on school nights. Randall replied "[a]s long as he's getting his work done" and "[i]f you're sitting at home, he might be up until 11 or 12 o'clock also," while acknowledging that Wyatt could also be sleeping during that time.

Testimony was received regarding a particular occurrence at the White Eagle Tavern on Friday, October 14, 2016. Randall testified that Wyatt was playing on the courthouse lawn and supposed to be staying with a friend overnight during his parenting time. However, Wyatt became mad at his friend and instead chose to sit in Randall's truck in the bar parking lot, without initially notifying Randall, who was sitting inside with a group including the friend's father. At one point Wyatt entered the bar and used the restroom. Randall saw Wyatt at this time, but did not ask him any questions, believing that he was staying with the friend that night.

Wyatt texted Randall repeatedly starting at 10:53 p.m. requesting to leave, but Randall stated he did not receive these messages until leaving the bar, because his phone was turned upside

down and text messaging was turned off. Wyatt proceeded to text Jodi at 11:45 p.m., but she was asleep and did not reply until 2:01 a.m. Randall eventually left the bar, and found Wyatt awake in his vehicle.

Natasha Weller, Jodi's adult daughter, was at the White Eagle Tavern during this evening, and testified that she saw Randall and Wyatt at the tavern that night. Weller first saw Randall enter the bar and sit down at a table with friends around 9:00 p.m., and later discovered that Wyatt was with him when she saw Wyatt enter to use the bathroom. Weller communicated with Wyatt via text that night. Wyatt informed Weller that he was sitting outside in the vehicle. Weller texted Wyatt to see if he wanted to sit with her group, but he declined. Weller later saw Wyatt in Randall's truck around 11:00 p.m. as she left the bar.

Jodi testified that she filed the complaint to modify and agreed to the stipulated temporary order, and corresponding limitations on Randall's parenting time, "[f]or the safety of Wyatt." She felt that Randall was not telling the truth regarding Wyatt's plans during the evening of October 14, 2016. Jodi claims that Wyatt "has sat many times in the truck waiting" for Randall. She felt enactment of her proposed parenting plan would be in the best interests of Wyatt.

Beyond concerns centering on evening visits to bars, Jodi claimed Randall attempted to pressure her into dropping the ex parte order. Jodi testified that Randall, while out on work release, came to her residence and threatened her with police and legal action, based upon Jodi hitting a mail box and transferring funds out of Wyatt's bank account, if she did not drop the charges and ask the court to vacate the ex parte order. Randall in turn provided testimony in support of continuing and expanded parenting time. Randall attested to enjoying time with Wyatt, attending hockey games, hunting, going out to eat, and taking Wyatt to play baseball with his cousins. Randall visited Wyatt at school for lunch on occasion while he was on work release. Randall noted that Wyatt has a 3.82 GPA, as reflected by the most recent report card, and always completes his homework before they go anywhere. Randall expressed concern that Wyatt's increasing involvement in sports and activities limits their father-son time. Randall claims that on many nights Wyatt calls Jodi to ask if he can stay at Randall's house longer and play with the other children. Jodi has agreed to these requests in the past.

Randall believes it is in Wyatt's best interests to continue weekday overnight visits, and that he also be allowed overnights during the alternating Monday and Thursday parenting time. Randall believes Wyatt wants the additional overnights as well.

Lastly, Randall presented the character testimony of a fellow youth sports coach, Dana Kirby, and Randall's older sisters, Jenny Neujahr and Connie Borouch. Kirby testified that he frequently observes Randall with Wyatt, and described their relationship as "very good" and "[a] lot better than a lot of the other kids that I see with their parents." Kirby based this opinion upon Randall and Wyatt doing activities together, such as sports and fishing, and that Randall treats Wyatt well. Kirby trusted Randall to transport his son, who is friends with Wyatt. Neujahr testified that "[y]ou won't find a better father than [Randall] to Wyatt," and they have a strong father-son bond. She described Randall as a dedicated father who stops his work to spend time with Wyatt. Borouch described Randall as a "very family-oriented person" who has a "fantastic relationship" with Wyatt. She testified that Randall is more involved in his son's life than most fathers, spending

quality time with Wyatt. They hunt, fish, shop, and bake and fix meals together. Randall would prepare meals in a crockpot, and bake and cook for Wyatt as well.

On November 9, 2016, the court entered an order of modification. The court found a material and substantial change in circumstances occurred since entry of the decree in December 2012; specifically noting that Randall "chooses to drink and drive, including with the minor child, and to take his minor child to drinking establishments in violation of the stipulated Court order."

The court found that Randall "largely ignored" the stipulated temporary order and "takes the minor child to the bar on a regular basis until late at night and that the minor child is struggling as a result." The court counted at least nine occasions where Randall neglected to have Wyatt home before 8:00 p.m., and cited certain instances where Wyatt did not get home until after midnight. The court noted that these trips to the bar would last much longer than a meal time. The court also considered the October 14 incident at While Eagle Tavern.

The court determined it to be in the best interests of the child that Randall's parenting time "be modified to eliminate the overnight visit each Wednesday" and that these visits "shall end at 8:00 p.m." Further, the parenting plan was modified to include the following provisions:

1. The Father shall not consume alcohol prior to or during any parenting time he receives with the parties' minor child.

2. During his parenting time, the Father shall not be allowed to take the minor child to any establishment where alcohol is served.

3. The Father shall provide proof to the Mother that he has not consumed alcohol prior to picking up the parties' minor child and upon returning the parties' minor child.

4. The Father shall not drive any vehicles which are not equipped with an ignition interlock device as ordered by any Court while in the presence of the parties' minor child.

5. The Mother shall be authorized to suspend the Father's parenting time in the event the Father violates any of the terms as set forth above.

While the court granted several of the modifications suggested in Jodi's proposed parenting plan, it did not include the following proposals: Randall must obtain and provide a copy of an alcohol evaluation to Jodi, and Randall's parenting time is to be limited to every other weekend from 8:00 a.m. until 6:00 p.m. on Saturday and Sunday, completely removing weekday parenting time and weekend overnight visitation.

Randall subsequently perfected his appeal to this court and Jodi her cross-appeal.

ASSIGNMENTS OF ERROR

Randall assigns, restated and reordered, that the district court erred in (1) finding a material change in circumstances occurred since entry of the decree of dissolution, (2) making modifications to Randall's parenting time, and (3) impermissibly delegating the court's authority to unilaterally suspend parenting time on the basis of violating the modified parenting plan to Jodi.

Jodi on cross-appeal assigns, restated, that the district court erred in failing to adopt her proposed parenting plan in its entirety.

STANDARD OF REVIEW

Child custody and visitation determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear, supra*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

ANALYSIS

MATERIAL CHANGE IN CIRCUMSTANCES

Randall argues that the district court abused its discretion in determining there was a material change in circumstances sufficient to justify modifying parenting time. He asserts there was no evidence of parental unfitness or inability to provide for Wyatt's needs. Randall emphasizes that Wyatt is a good student with a healthy social life, who enjoys spending time with his father. He claims there is nothing unstable or concerning about his lifestyle or parenting of Wyatt. Randall asserts he does not take Wyatt to bars to drink, but rather for food and to socialize. He notes there are no local dining establishments that are not also bars, with the exception of Dairy Queen. Lastly, Randall claims the completion of his sentence, and end to the resulting disruption in parenting time, renders moot a change of circumstances argument.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013). The party seeking modification of a child custody matter such as visitation bears the burden of showing a material change in circumstances subsequent to the original decree. *Schrag v. Spear, supra*. A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

Our de novo review of the record demonstrates a material change of circumstances since entry of the decree. Randall's criminal history of speeding, reckless driving, and DUIs following entry of the decree, along with his repeated violations of the stipulated temporary order, support this conclusion. Randall's completion of his DUI sentence does not render his prior actions moot as they relate to his parenting of Wyatt. Randall admitted to both speeding and driving while intoxicated with Wyatt as a passenger, which obviously is concerning behavior. Randall also admitted that he understood the limitations of the temporary order, but he still violated the order. Randall provided various excuses for violating the order. Randall claimed to take Wyatt to drinking

establishments because such locations were gathering places in the community, and no other eating establishments were available. Randall claimed to allow Wyatt off his property after 8:00 p.m. during the school year because of Randall's work schedule, and he believes these late evenings have not negatively impacted Wyatt, who is a good student. While we recognize that small town life sometimes involves taking children to the local dining establishment where alcohol is served, this does not excuse Randall's direct violation of the temporary order. Furthermore, evidence was received reflecting other dining options, including cooking at home, which Randall and Wyatt enjoyed. And, the evidence about keeping Wyatt out late on Wednesday evenings during the school year, another direct violation of the temporary order, reflects negatively upon Randall's parenting decisions.

The court did not abuse its discretion in finding a material change in circumstances and modifying Randall's parenting time. Nebraska precedent establishes that subsequent criminal history and violations of court orders support finding a material changes in circumstances. See, *State on behalf of Savannah E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013) (court considered criminal charges and convictions in finding existence of material change in circumstances); *Parker v. Parker*, 234 Neb. 167, 449 N.W.2d 553 (1989) (conduct by parent was a direct violation of parties' settlement agreement relating to visitation approved by the court, and was found to constitute material change in circumstances).

Randall's first assignment of error is without merit.

MODIFIED PARENTING PLAN

Randall argues that, even if a material change in circumstances occurred, the district court abused its discretion in limiting parenting time in a manner which fails to serve the best interests of Wyatt. Randall points to the positive testimony regarding his parenting ability, relationship with Wyatt, and his desire to spend more time with Wyatt. Randall asserts that Wyatt similarly has expressed a desire to spend more time with him.

In addition to the elimination of weekday overnight visitation, Randall also challenges provisions of the modified parenting plan as "void-for-vagueness" or otherwise impractical. First, Randall argues the provision prohibiting alcohol consumption "prior to" visitation fails to define or quantify the period of time covered by this limitation. Second, Randall asserts the prohibition on taking Wyatt to drinking establishments restricts his ability to take Wyatt out to eat after working late and to spend time with friends, as the local restaurants also serve alcohol. Third, Randall claims the requirement to prove he has not consumed alcohol prior to picking up or returning Wyatt is similarly overbroad, vague, and not feasible.

Before visitation may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child. *Schrag v. Spear, supra*. The best interests of the child is the primary and paramount consideration in determining and modifying visitation rights. *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004).

Neb. Rev. Stat. § 43-2923 (Reissue 2016), of the Nebraska Parenting Act, sets forth a non-exhaustive list of factors to be considered in determining the best interests of a child in regards to visitation rights. Such factors include the relationship of the minor child with each parent, the desires of the minor child, the general health and wellbeing of the minor child, and credible

evidence of abuse inflicted on the child by any family or household member. In addition to considering these statutory factors, the Nebraska Supreme Court has held that courts should determine "the nature and extent of visitation rights on a case-by-case basis" and may consider many factors and circumstances in each individual case, such as:

> the age and health of the child; the character of the noncustodial parent; the place where visitation rights will be exercised; the frequency and duration of visits; the emotional relationship between the visiting parent and the child; the likely effect of visitation on the child; the availability of the child for visitation; the likelihood of disrupting an established lifestyle otherwise beneficial to the child; and, when appropriate, the wishes of the child.

*Fine v. Fine*, 261 Neb. 836, 843, 626 N.W.2d 526, 532 (2001).

A visitation schedule is generally considered reasonable if it is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). There is not a certain mathematical amount of visitation that is considered reasonable; the determination of reasonableness is to be made on a case-by-case basis. *Id*.

Upon our de novo review, we find that the district court did not abuse its discretion in modifying visitation to eliminate weekday overnight parenting time. Based upon the circumstances of the present case, this modification was in the best interests of Wyatt.

Evidence was received that Wyatt enjoys a strong bond and positive relationship with Randall, along with a healthy social life. Randall claims Wyatt expressed a desire for extended visitation while under his care. However, Randall's violations of the temporary order cannot be overlooked. These violations, specifically allowing Wyatt to be out late on school nights, could negatively affect the general health and wellbeing of Wyatt. The elimination of overnight weekday parenting time was a reasonable means of preventing such harm in the future. The resulting modified schedule provides a satisfactory basis for preserving and fostering Wyatt's relationship with Randall.

Also, upon our de novo review, we find that the district court did not abuse its discretion in prohibiting alcohol consumption prior to visitation, prohibiting taking Wyatt to drinking establishments, and requiring proof of sobriety. While these general provisions are to a certain extent imprecise, they were appropriate modifications under the circumstances of this case. Randall's incidents of drinking and driving understandably cause concern for Wyatt's safety. These provisions reasonably assist in eliminating these concerns without interfering with Randall's ability to exercise parenting time. See *Von Tersch v. Von Tersch*, 235 Neb. 263, 455 N.W.2d 130 (1990) (court's requirement that father's visitation of his children be liquor-free not abuse of discretion, given evidence of extent of father's alcohol use).

The district court's modifications to the parenting plan to ensure Wyatt would no longer be out late on school nights and visiting bars with Randall, based on his recent criminal history and violation of the temporary order, are consistent with the best interests of the child.

Randall's second assignment of error is without merit.

Randall argues that the district court abused its discretion in granting Jodi an impermissible delegation of court authority to determine his visitation rights with Wyatt, based upon the vague and subjective discretionary provisions of the modified parenting plan. As previously discussed, the other provisions of the modified parenting plan are reasonable under the circumstances of this case. Therefore, we focus our analysis on whether the district court improperly delegated its authority to Jodi to limit parenting time based upon perceived violations of the order.

Our prior opinion in *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014) is instructive on the issue of judicial authority delegated to custodial parents. Therein, the mother argued that the district court erred in placing restrictions on cohabitation in the parenting plan. Specifically, the district court's order granted the father discretion to withhold overnight visitation with the mother if she cohabits with someone of the opposite sex, and vice versa. *Id.*

First, we noted precedent establishing that it is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests. This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or by third parties. *Id.* (citing *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002)).

We noted that in *Deacon*, the Supreme Court reversed an order which granted a psychologist the authority to effectively determine visitation and to control the extent and time of such visitation, concluding that such an order was an unlawful delegation of the trial court's duty that could result in the denial of proper visitation rights of the noncustodial parent. *Barth v. Barth, supra*. As authority for its conclusion, the *Deacon* court cited *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978). In *Lautenschlager*, the court observed:

> The rule that custody and visitation of minor children shall be determined on the basis of their best interests, long established in case law and now specified by statute, clearly envisions an independent inquiry by the court. The duty to exercise this responsibility cannot be superseded or forestalled by any agreements or stipulations by the parties.

201 Neb. at 743-44, 272 N.W.2d at 42. See, also, *Ensrud v. Ensrud,* 230 Neb. 720, 433 N.W.2d 192 (1988) (disapproving district court order authorizing child custody officer to control custody and visitation rights of minor child); *In re Interest of Teela H.,* 3 Neb. App. 604, 529 N.W.2d 134 (1995) (order granting psychologist authority to determine time, manner, and extent of parental visitation was improper delegation of judicial authority).

We noted in *Barth* that the delegation at issue was not to a third party, but rather to a custodial parent. However, we held that "the rationale of the aforementioned cases applies with equal force when it is the custodial parent who is granted the authority to determine the visitation privileges of the noncustodial parent, because setting the time, manner, and extent of visitation is solely the duty of the court." *Barth v. Barth*, 22 Neb. App. at 255, 851 N.W.2d at 116. Indeed, in *Deacon*, the Supreme Court said, "[The custodial parent's] position that visitation rights should be at his discretion, as in his judgment shall be reasonable and proper for the best interests of the

children, is erroneous and cannot be sustained." 207 Neb. at 200, 297 N.W.2d at 761-62. As a result, this court in *Barth* found an abuse of discretion by the district court in allowing the father to determine whether the mother is entitled to overnight visits, and we modified the parenting plan to remove that provision.

Upon our review, we find that the district court abused its discretion in allowing Jodi to determine whether Randall is entitled to visitation, and we modify the parenting plan to remove that provision. It is the sole responsibility of the district court to determine questions of visitation regarding Wyatt according to his best interests, including the time, manner, and extent of visitation. This independent responsibility cannot be controlled by Jodi, even if such authority was previously contained within the stipulated temporary order agreed to by the parties.

Jodi suggests an exception to the rule regarding impermissible delegation for instances in which one parent has a history of alcohol abuse, driving while intoxicated, and other reckless behavior. We decline to adopt such an exception. Other permissible provisions within the modified order address these concerns. Furthermore, other remedies are available to Jodi in the event Randall violates the modified order. For example, Jodi could seek to further modify the parenting plan, pursue another ex parte order to suspend parenting time, or file a contempt motion alleging failure to comply with court orders.

The court's grant of authority to Jodi to suspend visitation was impermissible, and we therefore remove it from the parenting plan.

### JODI'S PROPOSED PARENTING PLAN

On cross-appeal, Jodi argues the district court abused its discretion in failing to adopt her entire proposed parenting plan, claiming it to be in Wyatt's best interests. Jodi's proposed parenting plan would completely remove weekday parenting time and weekend overnight visitation.

We find no abuse of discretion by the district court in choosing not to enact the proposed parenting plan in its entirety. Evidence was presented showing that Randall and Wyatt have a good relationship and enjoy spending time together. Wyatt is doing well in school and is engaged in many activities with his father. To restrict Randall's parenting time further would overly impede the father-son relationship and oppose the best interests of Wyatt. The court did not err in failing to enact Jodi's proposed parenting plan in its entirety.

Jodi's assignment of error on cross-appeal is without merit.

### CONCLUSION

We find that the district court erred in granting Jodi authority to unilaterally suspend parenting time. We vacate this provision of the order. All other provisions in the modification order are affirmed.

AFFIRMED IN PART, AND IN PART VACATED.