OPINION OF THE COURT
Vincent R. Balletta, J.
On this motion the court is asked to make a determination concerning the religion of the infant child, Steven Siegel, who was born on August 24, 1972.
Plaintiff and defendant were married in 1965, and they have two infant children, Kimberly Siegel, born on October 7, 1967, and Steven. The parties were divorced on December 8,1982, after having executed a separation agreement dated November 23,1982. The inclusion of article IX(m) in the agreement indicates that the parties must have had some conversations concerning the religion in which Steven was to be reared but that they could not arrive at a conclusion. Since they could not make their own decision on this delicate subject, they endeavored to pass on to the court the very important responsibility of making such a determination. Article IX(m) provides as follows: “The parties will consult with éach other regarding the religious upbringing of their son, steven. If the parties cannot agree, the Supreme Court of the State of New York, if it has jurisdiction, will make a determination. Each party will bear his/her own legal costs for such determination.”
Pursuant to article IX of the agreement, custody of the infant children is with the mother, Susan Siegel. Susan Siegel is Jewish; the father of the children, Richard Siegel, was Jewish. Susan Siegel, the custodial parent, practices the Jewish faith. Richard Siegel, the defendant father, who has remarried, now practices the Episcopal religion. Each of the parties makes statements concerning the devoutness *933 of the other party, but I consider all of those statements as irrelevant and immaterial since it is not for this court to make determinations as to the seriousness of any religious commitment.
When the parties lived together as husband and wife, they belonged to the North Country Reform Temple in Glen Cove, and their infant daughter, Kimberly, was bat mitzvahed after having received religious training at that temple. It is uncontroverted that the defendant attended Kimberly’s bat mitzvah services, although it is not clear as to whether the parties separated before or after the bat mitzvah.
The plaintiff, Susan Siegel, is currently practicing the Jewish faith and her son, Steven, likewise is practicing that faith and obtained the usual and customary religious training looking toward his bar mitzvah.
The defendant claims that the plaintiff failed to consult with him about the religion in which Steven should be reared, and takes the child to Episcopal services, ordering the child to accompany him and his wife to such services during visitation periods. It is uncontroverted that the child wishes to be brought up in the Jewish faith. Apparently, the defendant thinks it would be proper for Steven to practice the Episcopal religion while under the control and direction of his mother in the house where the mother practices the Jewish faith, and the boy’s sister, who has been bat mitzvahed, practices the Jewish faith.
It is my personal belief that the defendant’s position is absolutely ridiculous. How can he possibly be interested in the welfare of his son and expect that his son would be brought up in and practice á different religion than that of the custodial parent and his sister, all of whom live together.
Of more immediate interest are the provisions of article IX(m). This court takes the position that the Supreme Court of the State of New York has no jurisdiction whatsoever to determine the religion in which a child should be reared. As a matter of policy, the. initial posture of the courts with respect to a child’s religious upbringing is one of noninterference. (Spring v Glawon, 89 AD2d 980.) Such a determination falls within the province of the parents. *934 The defendant’s allegation that the plaintiff has not consulted with him concerning the religious training to be given to the son is denied by the plaintiff. The plaintiff’s position is that she tried to discuss this matter with the defendant but was never given an answer. At any rate, it is immaterial since one can easily assume that the defendant would have wanted the child to be brought up in the Episcopal religion, which he now practices since his remarriage, and that the plaintiff, as the custodial parent, would want the child brought up in the Jewish religion, which she practices.
This court will not make any direction with respect to a child’s religion. The custodial parent has the right to make such determination. (Diemer v Diemer, 8 NY2d 206; Schwarzman v Schwarzman, 88 Misc 2d 866; Mester v Mester, 58 Misc 2d 790.) In the view of this court the plaintiff has an absolute right to determine the religion in which the child in her custody and control should be reared.
The statement in the separation agreement that the parties would consult with each other does nothing more than provide for some kind of discussion. In the long run, that statement is nothing more than window dressing and is perhaps used to soothe the signatories to the agreement since consultation, in and of itself, does not require reaching any particular conclusion. Since the parties, in their agreement, have included a provision which is obviously inappropriate and unenforceable as respects the Supreme Court making such a decision, the ultimate decision in this matter lies with the custodial parent.
Accordingly, the plaintiff is entitled to an order declaring that the child, Steven Siegel, shall be raised in the religion chosen by the plaintiff mother, and in this regard, the defendant shall not bring the infant child to a religious service other than that chosen by his mother.