Mary Q. GRIFFIN, Petitioner,

v.

Clarence A. GRIFFIN, Respondent.

No. 83SC85.

Supreme Court of Colorado,
En Banc.

April 29, 1985.

Charles G. Lief, Roper, Lief, Mains & Cobb, Boulder, for petitioner.

John G. Taussig, Jr., Roger E. Stevens, Boulder, for respondent.

Linda Daley, Hinds and Mustain-Wood, P.C., Littleton, Chairman Amicus Committee, Family Law Section, Colorado Bar Ass'n.

DUBOFSKY, Justice.

We granted certiorari to review *In re Marriage of Griffin,* 666 P.2d 1105 (Colo. App.1982), in which the Court of Appeals held that, where a dissolution decree provides for joint parental selection of their child's school, the parents may request the district court to select the school when the parents cannot agree. We reverse.

The marriage of Mary Q. Griffin (the mother) and Clarence A. Griffin (the father) was dissolved on September 14, 1979. The decree of dissolution incorporated a separation agreement between the mother and the father that contained the following provisions concerning the custody and upbringing of their son, Hardy:

3. *Custody and Visitation*

A. *Joint Decisions and Deadlocks:*

The wife shall have custody of Hardy Micajah Griffin. The husband shall have certain full legal rights set forth in this Agreement. The District Court of Boulder County, Colorado, shall have continuing jurisdiction over the welfare of the child and to enforce the rights of either party to joint decision making, visitation and custody so long as either party is domiciled in Colorado....

. . . .

C. *Education*

Both parents shall fully and equally participate in the education of their child. Schools shall be selected jointly. To promote a close family environment, both parents shall participate in Parent-Teacher Conferences and other school-related parental obligations such as trips, carpools and fundraising. These are the legal and binding rights of both parties.

On August 26, 1980 the father filed a motion in the Boulder County District Court entitled "Motion to Enforce Decree and Separation Agreement by Requiring that Child Be Placed in a Public or Private School by Joint Decision of Parties." The father alleged that the mother planned to enroll their son in the Vidya School in Boulder over the father's objections, denying the father his right under the separation agreement to participate in the selection of their son's school. The father further alleged that the Vidya School was sponsored by the Boulder Tibetan Buddhist Community, and that enrollment of the son in such a school would hamper his development by placing him outside "the broad stream of the American cultural community...."

At a hearing before the district court on September 19, 1980, the mother testified that the father had failed to investigate or visit the school although the mother had arranged for him to do so. Both the father and the Vidya School director confirmed that the father had broken an appointment to visit the Vidya School, and had failed to make any further arrangements to investigate the school. At the conclusion of the hearing, the court denied the father's motion, finding that the father had had an opportunity to exercise his right under the agreement to participate in the selection of his son's school, but had failed to avail himself of the opportunity.

On May 8, 1981, the father again filed in the Boulder County District Court a motion to enforce the separation agreement and dissolution decree, alleging that Hardy had been enrolled in the Vidya School for the 1980–81 school year, and that the mother had refused to discuss Hardy's schooling or allow the father "to participate in the selection of the school." A different district court judge heard the motion on September 4, 1981. At the hearing, the father requested that the court require the parties to meet in order to select a school, and that the court choose a school for the parties if they were unable to agree.[1] The court

1. At the hearing, the father attempted to testify concerning his evaluation of the Vidya School and his discussions with the mother concerning their child's education. The district court ruled

denied the motion, determining that the separation agreement made no provision for the resolution of disagreement concerning the selection of schools. In the absence of such provision, the court ruled, section 14–10–130, 6 C.R.S. (1973) provides that decisions concerning the child's education are to be made by the custodial parent. Therefore, the court concluded, the father's motion was "meaningless" because the statute does not permit the court either to substitute its own judgment for that of the custodial parent or to force the custodial parent to compromise on any educational decisions.

The Court of Appeals reversed the district court order, holding that "the intention of the parties was to create equal decision-making authority" over the selection of schools, that the agreement supersedes the statute granting authority over the child's upbringing to the custodial parent, and that consequently "the court must determine the issue of choice of schools" in case of parental deadlock. 666 P.2d at 1106–07. We disagree. In our view the "joint selection of schools" provision is unenforceable and the custodial parent therefore retains the ultimate authority to select the child's school.

Section 14–10–130(1) allocates the authority to make child rearing decisions following an award of custody:

> *Except as otherwise agreed by the parties in writing at the time of the custody decree,* the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court, after hearing and upon motion by the noncustodial parent, finds that, in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development

significantly impaired. (Emphasis added.)

The father here contends that the parties have agreed to joint authority over their son's education, thereby limiting the mother's power under this statute to control educational decisions.[2]

The agreement at issue required that the parents consult concerning their child's education and jointly select his school. The agreement neither selected a school nor provided a means of resolving deadlocks over school selection. In essence, the parties merely "agreed to agree," to negotiate and reach agreement at some future time concerning their child's education. Ordinarily, such agreements are unenforceable because the court has no power to force the parties to reach agreement and cannot grant a remedy. 1 *Corbin on Contracts* § 95 at 397 (1963); 1 Williston, *A Treatise on the Law of Contracts* § 45 at 149–52 (Jaeger 3d ed. 1963); *Restatement (Second) of Contracts* § 33 (1981). In *Jenks v. Jenks,* 385 S.W.2d 370 (Mo.App.1964), the Missouri Court of Appeals applied this general rule to an agreement similar to the one before us. There, the parties agreed to consult concerning the education of their children and to agree in writing upon the schools that their children would attend.[3] The court held that the agreement was unenforceable because courts cannot force parties to reach agreement; given this powerlessness, it would be futile to order the parties to meet and negotiate. *Id.* at 376.

We agree with the court in *Jenks* that the general rule rendering "agreements to agree" unenforceable is particularly applicable to agreements of the type before us. Determinations affecting the custody and welfare of children must always be made in accordance with the best

---

that the testimony was unnecessary because the father's motion presented a purely legal question.

**2.** The father does not contend here that the child's physical health would be endangered or his emotional development significantly impaired by the mother's choice of school.

**3.** The parties also had agreed to arbitration in case of deadlock, but stipulated before the Court of Appeals that the arbitration provision was unenforceable in equity.

interests of the child. § 14–10–124, 6 C.R.S. (1973 & 1984 Supp.); *In re Marriage of Short,* 698 P.2d 1310, 1312 (Colo.1985); *Kelley v. Kelley,* 161 Colo. 486, 490, 423 P.2d 315, 317 (1967). The validity of agreements concerning custody and upbringing of children must be judged against this standard. *In re Marriage of Lawson,* 44 Colo.App. 105, 107, 608 P.2d 378, 380 (1980) (trial court must determine that custody agreement is in best interests of child before it may be incorporated into dissolution decree). Both the legislature and courts of Colorado have recognized that child custody arrangements that promote discord between the parents are not in the best interests of the child. § 14–10–124(5)(a) (1984 Supp.) (joint custody award must take into account "the ability of the parties to cooperate and to make decisions jointly"); *In re Marriage of Lampton,* 677 P.2d 352 (Colo. App.1983), *cert. granted* No. 83SC344 (Jan. 16, 1984) (award of joint custody without the agreement of the parties is contrary to the best interests of the child).

Enforcing an agreement, such as this one, that requires the parents to meet and agree after they already have demonstrated their inability to agree exposes the child to further discord and surrounds the child with an atmosphere of hostility and insecurity. *See Cleveland v. Cleveland,* 165 Conn. 95, 328 A.2d 691, 695 (1973) (agreement providing for choice of school by noncustodial parent deleted from separation agreement because it would lead to further parental conflict); *cf. Rhoades v. Rhoades,* 188 Colo. 423, 428, 535 P.2d 1122, 1125 (1975) (statute awarding child rearing decisions to custodial parent has rational basis because it will avoid the "constant buffeting of a child between two parents who disagree on the issues of the child's upbringing, including his education, health care and religious training...."). Therefore, any attempt to enforce the agreement by requiring the parents to negotiate and reach a future agreement would be not only futile, but adverse to the interests of the child.[4]

▮ Moreover, the court is not in a position to enforce this agreement by substituting its choice of schools for that of the parents. The court, a stranger to both child and parents, is ill-equipped to understand and act upon the needs of the child. As the court stated in *Jenks:*

> Courts are not so constituted as to be able to regulate the details of a child's upbringing. It exhausts the imagination to speculate on the difficulties to which they would subject themselves were they to enter the home or the school or the playground and undertake to exercise on all occasions the authority which one party or the other would be bound to ascribe to them. Considerations of the most practical kind, therefore, dictate that in these cases the duty of attending to the details of the child's rearing be delegated to a custodian....

385 S.W.2d at 377. *See also Kilgrow v. Kilgrow,* 268 Ala. 475, 107 So.2d 885 (1959) (court has no power to determine details of upbringing where parents are not separated); *Bennett v. Bennett,* 73 So.2d 274 (Fla. 1954) (court has no power to choose school for child of divorced parents). Resort to the courts, like forced negotiations between parents, is likely to foster and magnify parental discord to the detriment of the child.

▮ In addition, where the selection of a school is intertwined with religious considerations, court control over educational decisions may be constitutionally impermissible. The father here objects to the school chosen by the mother because it is associated with the Buddhist religion and therefore allegedly will remove his child from the mainstream of American life. However, the father has not demonstrated any relation between the purportedly Buddhist curriculum of the Vidya School and the mental

---

**4.** Empirical studies have suggested that parental post-divorce conflict adversely affects the adjustment and development of the child. *See* Wex-

ler, *Rethinking the Modification of Child Custody Decrees,* 94 Yale L.J. 757, 789–92 (1985) (hereinafter "Wexler").

or physical health of his child;[5] the court could respond to the father's claim only by determining the abstract propriety of sending the child to a Buddhist school. That determination would be repugnant to the free exercise of religion clauses of both the United States and Colorado Constitutions. U.S. Const.Amend. 1; Colo. Const. Art. II, Sec. 4. In *In re Marriage of Short,* 698 P.2d 1310, we held that "a court may not properly inquire into or make judgments regarding the abstract wisdom of a particular religious value or belief. Evidence of religious beliefs or practices is admissible only as it reasonably relates to potential mental or physical harm to the welfare of the child." At 1313. *See also Siegel v. Siegel,* 122 Misc.2d 932, 472 N.Y.S.2d 272 (1984) (separation agreement requiring court to choose religious training for child is unenforceable; decision remains with custodial parent).

In sum, we hold that the agreement of the parents to jointly select a school for their child is unenforceable. Because no enforceable agreement concerning the child's education exists, the power to control the child's education remains with the mother as custodial parent under section 14–10–130(1). The Court of Appeals erred

in reversing the district court's denial of the father's motion to enforce the agreement.

The judgment of the Court of Appeals is reversed and the case is remanded to the Court of Appeals to reinstate the ruling of the district court.[6]

KIRSHBAUM, J., does not participate.

---

5. Although the father in both of his motions and in his testimony at the September 19 hearing asserted that his son was suffering psychologically as a result of practices at the Vidya School, he was unable to specify any particular school or religious practices that might result in such harm. Rather, the father objected to the Vidya School because he feared that his child would be exposed to "Buddhist teaching" and because he read an article describing the Vidya School "as a place where non-aggression occurs...." Placing the issue before a court without evidence of specifically harmful practices is tantamount to asking the court to decide whether Buddhism is an acceptable religion for this child.

6. The father also argues on appeal that the district court erred in its assignment of the burden of proof in this case. According to the father, the mother's opposition to the father's original motion to enforce the dissolution decree amounted to a request that the court modify that decree. When one seeks thus to modify a child custody arrangement, the father argues, that person has the burden of demonstrating

"that a change has occurred in the circumstances of a child or his custodian and that the modification is necessary to serve the best interests of the child." § 14–10–131, 6 C.R.S. (1984 Supp.); *In re Marriage of Davis,* 43 Colo.App. 302, 602 P.2d 904 (1979) (party seeking modification of child custody provisions has burden of proving that statutory standards are satisfied); *cf.* Wexler, 94 Yale L.J. 757 (arguing for a more stringent modification standard to protect the rights of the custodial parent). The father's contention is without merit. The mother's position in response to both of the father's motions was that the parties had agreed only to consultation, and that, because the agreement did not provide for settling disputes over the selection of schools, it must be interpreted to leave final power over educational decisions in the mother's hands. The mother also argued that father had violated the agreement by failing to investigate the Vidya School and participate in good faith in the school selection process. The mother thus urged upon the court an interpretation of the separation agreement, not its modification. The requirements of section 14–10–131 are therefore inapplicable.