**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CARR OFFICE PARK, LLC, a Delaware
limited liability company,

Plaintiff - Appellant,

v.

CHARLES SCHWAB & CO., INC., a
California corporation,

Defendant - Appellee.

No. 07-1277

(D. Colorado)

(D.C. No. 05-CV-2572-EWN-BNB)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Plaintiff Carr Office Park, LLC (Carr) and defendant Charles Schwab &

Co., Inc. (Schwab) are, respectively, landlord and tenant in a corporate center

located in Colorado. Numerous leases and agreements regulate the relationship

between the parties. This dispute arose out of an agreement that obligated Carr to

build an office complex and associated parking garage, which Schwab was then

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

obligated to lease. Changed circumstances led the parties to alter the agreement so that it covered a multiple-tenant parking garage, rather than an single-tenant office complex. After completion of the parking garage, Carr and Schwab were unable to agree on the terms governing the lease of the garage. Carr filed this suit in Colorado state court, claiming Schwab was in breach of contract for its failure to pay rent for the garage. Schwab removed the action to the Federal District Court for the District of Colorado. The district court, with diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441, determined that essential elements of the parking garage lease were ambiguous and the agreements between the parties constituted only an unenforceable agreement to agree. The district court accordingly granted Schwab's motion for summary judgment. This court has jurisdiction under 28 U.S.C. § 1291 and **AFFIRMS** the judgment of the district court.

## I. Background

Carr owns and operates an office park in Arapahoe County, Colorado known as Panorama Corporate Center. In 1997, Carr and Schwab entered into a lease (Building III Lease) for a building known as Panorama III in the Corporate Center. At the same time, Carr and Schwab entered into an Option Agreement. Under the Option Agreement, Schwab was entitled to exercise five Expansion Notices, which would trigger Carr's obligation to construct a new building and Schwab's obligation to lease the newly constructed premises. The Option

Agreement specified that after the exercise of an expansion option, Carr would deliver a lease for the new building (New Building Lease). The Option Agreement also specified that the failure of the parties to agree to a New Building Lease would not affect the validity of the Expansion Notice. Rather, absent an agreement to alternate terms, the New Building Lease would contain, as a default, the same terms and conditions expressed in the Building III Lease. In December of 2000, the parties entered into the Second Amendment to the Option Agreement. That Amendment replaced the default lease terms from the Building III Lease with the terms negotiated for a different, prior lease between the parties for the Panorama VIII development. This new default lease was termed the Lease Form for New Buildings (Lease Form).

In June of 2000 Schwab exercised its expansion option, requiring Carr to build a new office site and parking garage known as Panorama IV. After the exercise of this option, Carr was approached by the Regional Transportation District (RTD) regarding the proposed construction of a light rail stop and parking facilities near the Panorama IV building site. Carr and RTD, with Schwab's knowledge, entered into an agreement under which the Panorama IV parking garage (Shared Parking Facility) would be shared by RTD and Schwab. Carr and Schwab entered into the Third Amendment to the Option Agreement, by which Schwab formally approved the agreement between Carr and RTD and

agreed that Carr would not be in breach of the Option Agreement by performing its contractual obligations to RTD.

Subsequently, Schwab determined that, due to current economic conditions, it no longer wished to go forward with the Panorama IV expansion. The parties agreed in the Fourth Amendment to the Option Agreement (Fourth Amendment) that Schwab could revoke its exercise of the expansion option with respect to the office building in exchange for payments in excess of seven million dollars.[1] The Fourth Amendment specified that the revocation did not apply to Schwab's lease of the Shared Parking Facility. It stated, "[u]pon completion of the Shared Parking Facility, [Schwab] shall be required to lease from [Carr] the parking spaces which are contained in two lowest levels of the Shared Parking Facility (the 'Parking Spaces')." The Fourth Amendment further provided that,

> within [sixty] days after [Schwab's] receipt of [Carr's] notice of commencement of construction of the Shared Parking Facility, [Carr] and [Schwab] shall, in good faith, negotiate and finalize a lease document (the "Garage Structure Lease") based on the Lease Form for New Buildings . . . concerning [Schwab's] lease of the Parking Spaces which requires [Schwab] to pay to [Carr] an annual triple net rent for use of the Parking Spaces calculated as a product of the Total Project Costs (as such term is defined in the Lease Form) for [Carr's] cost of the construction of [Schwab's] portion of the Shared Parking Facility and the Return Rate for Panorama IV . . . . [Carr] estimates that such rent will equal $502,200.00 per annum (triple net) assuming a Total Project Cost of $5,400,000.00 for [Schwab's] portion of the Shared Parking Facility."

---

[1]Schwab ultimately made a termination payment of $7,142,777 to Carr.

-4-

In addition, the Fourth Amendment dictated that "[i]n the event of any conflict between the terms and provisions of the Option Agreement, as it has previously been amended, and the terms and provisions of this Fourth Amendment, the terms and provisions of this Fourth Amendment shall control."

In January of 2004 Carr notified Schwab that it would commence construction of the Shared Parking Facility in February. As agreed to in the Fourth Amendment, this notification triggered negotiations between the parties for a Shared Parking Facility lease. On March 5, 2004, Carr representative Lisa Foyston sent Schwab a proposed lease (March 5 Draft). The March 5 Draft was redlined against a previously proposed draft lease for the entire Panorama IV complex, with changes intended to convert the lease into one for only the parking garage. Included in those changes were deletions of terms that would allow Schwab to purchase the premises (Article 33) and giving Schwab a right of first offer on the parking garage (Article 34). Schwab rejected the March 5 Draft and the parties continued their negotiations. The negotiations between the parties included discussions on issues such as the premises covered by the lease, which party bore the maintenance obligations for the structure, rental of excess space by Schwab, and whether an extension option would exist.

The parties failed to resolve these issues. The Shared Parking Facility was completed and delivered on December 3, 2004, but Schwab has never occupied the Facility nor paid rent. Carr brought suit on November 29, 2005, alleging

Schwab was in breach of contract. In the district court, the parties filed cross motions for summary judgment. Carr argued the existing agreements obligated Schwab to pay rent on the Shared Parking Facility and its failure to do so constituted breach. Schwab claimed no such agreement existed because material elements, such as rent, remained unresolved. It further argued that the Fourth Amendment constituted an unenforceable "agreement to agree." The district court agreed that unresolved material terms to the lease rendered any agreement unenforceable and granted summary judgment to Schwab on Carr's breach of contract claim.

## II. Discussion

This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Jones v. Denver Post Corp.*, 203 F.3d 748, 751 (10th Cir. 2000). We examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party, in this case, Carr. *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must show the absence of evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden

is met, the nonmoving party must then show a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2). In so doing, it may not rely solely on the allegations made in its pleadings, but must set out specific facts demonstrating a genuine issue for trial. *Id*. When sitting in diversity, this court applies the law of the forum state, here Colorado. *Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1168 (10th Cir. 2000).

To create an enforceable and binding contract, all essential elements must be settled or a method of settlement must be agreed upon. *Greater Serv. Homebuilders' Inv. Ass'n v. Albright*, 293 P. 345, 348 (Colo. 1930). "If the writing leaves the agreement of the parties vague and indefinite as to an essential element thereof, it is no contract and cannot be made one by parol." *Id*. at 348-49. "To have an enforceable contract it must appear that further negotiations are not required to work out important and essential terms." *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996) (applying *American Mining Co. v. Himrod-Kimball Mines, Co.*, 235 P.2d 804, 807-08 (Colo. 1951) (en banc)). When parties have entered into an "agreement to agree," the purported contract is unenforceable because the court cannot force parties to reach an agreement and therefore no remedy is available. *Griffin v. Griffin*, 699 P.2d 407, 409 (Colo. 1985) (holding that an agreement by two parents to "negotiate and reach agreement at some future time concerning their child's education" was unenforceable). "[C]ontract interpretation is a question of law that is reviewed de

-7-

novo." *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000) (en banc). Evidence beyond the language of the instrument itself is admissible only where there is an ambiguity in the terms of the contract. *Id.*

Carr argues the Option Agreement specified all essential terms of the lease and therefore was unambiguous and enforceable. Carr contends that Colorado law specifies only four essential elements of a valid lease: (1) the boundaries of the property to be leased, (2) the term of the lease, (3) the amount of rent to be paid, and (4) the rent commencement date.[2] *Carlson v. Bain*, 182 P.2d 909, 911 (Colo. 1947). Because the agreements between the parties contained these essential term, Carr argues, an enforceable lease exists. Schwab maintains that the district court correctly determined that neither the Lease Form nor the Option Agreement contained a final accord concerning rent for the Shared Parking Facility and, as a result, no binding contract existed.

We agree. The agreements between the parties constitute only an unenforceable "agreement to agree." The Fourth Amendment unambiguously states that Schwab and Carr "*shall*, in good faith, negotiate and finalize a lease document . . . concerning [Schwab's] lease of the Parking Spaces which requires

---

[2]Schwab contests Carr's assertion that any lease with these four elements is enforceable under Colorado law. Schwab argues that these elements are necessary, but not always sufficient. We find it unnecessary to resolve this dispute because Carr cannot show that all of the elements it acknowledges are necessary existed in its agreements with Schwab.

[Schwab] to pay [Carr] . . . rent" (emphasis added). The Fourth Amendment also provides "[t]he Garage Structure Lease *will* require [Schwab] to agree to an initial lease term of 15 years" (emphasis added). These provisions demonstrate that the Garage Structure Lease was a document to be negotiated and agreed to at a future date.

Furthermore, unlike the previous agreement between the parties, the Fourth Amendment did not designate lease terms to be used in the event of a failure to reach an accord on a new lease. The Option Agreement explicitly states that, in the event a New Building Lease cannot be negotiated, "[t]he lease of the New Building shall be on (and the New Lease shall contain) the same terms and conditions of the [Lease Form]." In contrast, the Fourth Amendment requires only that the parties negotiate a Shared Parking Facility lease "based on the Lease Form for New Buildings." Unlike the unamended Option Agreement, the Fourth Amendment does not provide a fully negotiated fallback lease. The Fourth Amendment specified that in the event of a conflict between the Option Agreement and the terms of the Fourth Amendment, the Fourth Amendment would control. As a result, the Fourth Amendment constitutes only an agreement to agree, which is "unenforceable because the court has no power to force the parties to reach agreement and cannot grant a remedy." *Griffin*, 699 P.2d at 409.

The ambiguities concerning the amount of rent to be paid on the Shared Parking Structure further supports this conclusion. Carr argues the Fourth

Amendment itself was a fully negotiated agreement specifying all essential elements of the lease for the Shared Parking Facility.  In particular, it claims the Fourth Amendment provided a method for calculating the Shared Parking Facility rent.  It points to the parties' agreement that "an annual triple net rent for use of the Parking Spaces calculated as a product of the Total Project Costs (as such term is defined in the Lease Form) for [Carr's] cost of the construction of [Schwab's] portion of the Shared Parking Facility and the Return Rate for Panorama IV . . . ."  Carr argues that this provision constitutes an enforceable agreement on rent.  It acknowledges that "Total Project Costs" is defined by reference to the Lease Form, but maintains the Fourth Amendment's definition is nevertheless unambiguous.

The calculation of rent agreed to in the Fourth Amendment, however, leaves two ambiguities which render the formula for rent meaningless absent further negotiations.  First, as defined in the Fourth Amendment, one element of the formula is "[Carr's] cost of the construction of [Schwab's] portion of the Shared Parking Facility."  Yet the Fourth Amendment provides no definition for Schwab's portion of the Shared Parking Facility.  It could arguably be defined as only the Parking Spaces themselves or include areas used for ingress and egress, land surrounding the garage, structural elements of the garage, and the land underneath the garage. Without an agreement between the parties as to how to determine Schwab's portion of the Shared Parking Facility, rent cannot be

calculated. An agreement that is "vague and indefinite as to an essential element" cannot be enforced. *Albright*, 293 P. at 348-49.

Second, Total Project Costs, an element of the rent calculation, is defined in the Lease Form. The definition includes land costs, construction hard and soft costs, construction of infrastructure on the land, and "the cost of operating and maintaining the Premises." The definition of construction hard costs included "Building Cost," "Parking Structure," and "Site Costs for the Premises." The Lease Form defines "Premises" as "the Land, the Building, the Parking Lot and the Parking Structure appurtenant thereto, and all other improvements on the Land." All provisions, however, contemplate a single-owner office complex and do not address the allocation of costs for a parking structure with two tenants. Thus, the Fourth Amendment and the Option Agreement do not specify how much of the land originally allocated for the Panorama IV complex is properly included in the cost of constructing only the Shared Parking Facility. Nor do the documents explain how the construction and maintenance costs of shared portions of the garage should be allocated between the two tenants. Without these components, rent cannot be calculated and the agreements are ambiguous as to an essential element.

Carr attempts to refute this conclusion by arguing that "both parties understood that the 'Tenant's portion of the Shared Parking Facility' means all of the lowest two floors of the parking garage and the associated improvements" and

-11-

that this is also the definition of Premises that should be used to calculate rent. Carr does not point to anything in the record, however, to show this understanding existed. Rather, the record shows that Carr took the position in lease negotiations that the Premises meant "the Land (subject to the 'RTD Easement' as such term is defined in the RTD Agreement), the Parking Structure and those certain other improvements located on the Land which provide access (ingress and egress) to the Parking Structure." Carr argues that it took this position only as a negotiating tactic and it has no bearing on the Fourth Amendment's default definition of Schwab's portion of the Shared Parking Facility. This assertion is belied, however, by Carr's calculations of rent for its damages exhibit before the district court. Carr admitted before the district court that its calculation of rent relied on a definition of Premises that included the cost of the land upon which the Shared Parking Facility was situated, including "ingress and egress and anything that relates to the garage." In earlier negotiations, Schwab had contested this characterization of "Premises." Carr's contention that the parties had a shared understanding of "Tenant's portion of the Shared Parking Facility" or "Premises" is not supported by the record.

Carr also argues that the Option Agreement, as amended, evinces the parties' intent to bind themselves to a lease for the garage. It notes the parties' agreement in the Fourth Amendment that Schwab's obligation to lease the Shared Parking Facility "cannot and shall not be revoked." The district court's decision,

-12-

Carr maintains, does not give effect to the intent of the parties as evidenced by the clear language of the agreement. While it is true the parties agreed Schwab had an obligation to lease a portion of the Shared Parking Facility from Carr pursuant to a yet to be negotiated Shared Parking Facility Lease, this court cannot force the parties to come to an accord on essential elements that are left ambiguous. *See Griffin*, 699 P.2d at 409.

In the alternative, Carr argues that the district court erred by granting summary judgment because a genuine dispute of material fact existed regarding the parties' agreement on what "Premises" were leased to Schwab. A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Carr maintains that a triable issue of fact exists concerning whether the parties agreed upon the Premises leased to Schwab. *See United States v. Hess*, 194 F.3d 1164, 1174 (10th Cir. 1999) ("[W]here interpretation of a contract requires examination of extrinsic evidence to determine intent, and where more than one inference may be drawn therefrom, a question of fact is presented.").

Here, however, Carr has not pointed to any extrinsic evidence that an agreement between the parties existed as to the bounds of the Premises in the Fourth Amendment. Rather, Carr relies only on the "plain language of the Fourth Amendment" as support for its position. Contract interpretation, however, is a

-13-

matter of law. *Ad Two, Inc.*, 9 P.3d at 376. As explained above, this court holds that as a matter of law the Fourth Amendment is ambiguous with respect to the extent of the Premises and the only extrinsic evidence in the record indicates that an agreement on the meaning of the term did not exist. Absent any extrinsic evidence suggesting there was an agreement as to the Premises to be leased, there is no genuine issue of fact for trial.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge