IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ANGELA K. v. TIMOTHY K.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ANGELA K., NOW KNOWN AS ANGELA B., APPELLEE,

v.

TIMOTHY K., APPELLANT.

Filed May 26, 2015.    No. A-14-672.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Avis R. Andrews for appellant.

Mark J. Milone, of Govier & Milone, L.L.P., for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Timothy K. appeals the order of the district court for Douglas County modifying the decree of dissolution, specifically with respect to custody, parenting time, and his financial responsibility for the parties' minor child. For the reasons that follow, we affirm, in part, and reverse and remand, in part.

## BACKGROUND

The parties were divorced pursuant to a decree of dissolution entered in the district court for Douglas County on June 27, 2003. At the time of the divorce, the parties had three minor children. The decree awarded the parties joint legal and physical custody of the children. The

children spent Monday and Tuesday with their father, Wednesday and Thursday with their mother, and alternated weekends between the two homes.

In April 2006, an order of modification defined holiday parenting time by agreement of the parties. Angela filed a complaint to modify the decree on April 26, 2012, requesting sole legal and physical custody of the two children who were minors at the time, James and Ashley. She also requested an order restricting contact between Timothy and the children and requiring their contact to be supervised.

James turned 19 approximately 3 months after the modification action was filed, and only Ashley, born in May 1997, is subject to the current action. The trial court issued an ex parte restraining order on April 26, 2012, enjoining Timothy from contacting, visiting, and/or disturbing the peace of Ashley.

On May 25, 2012, Timothy filed an answer denying the allegations in the complaint to modify. On June 4, 2012 the trial court ordered that Timothy should have no contact with Ashley until further order of the court except in the form of therapeutic contact, as directed by Ashley's mental healthcare providers. Both parties were ordered to have full and complete access to all of the medical and mental health records for the minor child.

On October 16, 2013, the trial court ordered the parties to arrange a psychological/psychiatric evaluation for Ashley. Also in October, Ashley received a car from her paternal grandparents. In December 2013, Ashley was caught with marijuana and drug paraphernalia in her car. After Ashley was cited, Angela requested that Timothy take back the car that Ashley had received. Ashley was expelled from school after the drug charges were brought against her. She had also been in a physical altercation with another individual resulting in criminal charges. Ashley was admitted to a diversion program. Ashley completed the school year through the ombudsman program. The ombudsman program is an alternative school for students in the Millard Public Schools district to complete their coursework for the semester after they are expelled.

On January 14, 2014, the trial court entered an order eliminating the no contact order, and determined that Timothy was entitled to reasonable parenting time to be arranged by the parties. The parties were unable to arrange parenting time following that order.

A few weeks before trial, Ashley texted Angela and stated that she was afraid because Timothy had shown up and tried to take her from her school. Angela was already at the school to pick up Ashley, and when she entered the building she saw that Ashley was hysterical, screaming, and crying. While Angela and Timothy spoke with the school's staff, Ashley left the building and ran to Angela's home.

Trial was held on June 4 and June 19, 2014. Angela testified that both parties have remarried since the date of the decree. Angela testified that the parties were unable to successfully co-parent in the years following the modification of the decree in 2006. She testified that they have had communication problems, and they generally only communicated by phone or email.

Angela testified that on April 23, 2012, she received a call from her son James stating that he was taking Ashley to see his psychologist, Dr. Joseph Rizzo. Rizzo referred them to Immanuel Hospital and recommended that Ashley be admitted to the adolescent psychiatric unit for suicidal ideation. Angela notified Timothy approximately 4 to 5 hours after Ashley's admission, and Ashley was hospitalized for a week. Rizzo provided an affidavit supporting Angela's application

for an order preventing Timothy from seeing Ashley because Ashley was so upset. Timothy was not allowed to see Ashley during her stay at Immanuel.

Angela stated that Ashley had not been treated for any mental health issues prior to her admission to Immanuel, but Angela had noticed signs of depression in Ashley around 2010. Ashley had complained about people bullying her at school.

After Ashley's admission to Immanuel, Angela sought a modification of the decree and a no contact order for Timothy. Prior to that time, Angela did not observe anything that led her to believe Timothy was the cause of Ashley's mental health issues.

Ashley continued to see Rizzo after her discharge from Immanuel. Rizzo informed Angela that Ashley was cutting herself, and Ashley testified that she began cutting herself when she was 12 or 13 years old. Rizzo diagnosed Ashley with major depressive disorder. During Ashley's sessions with Rizzo, Ashley alleged that Timothy put his hands around her throat, he had thrown her on the floor, and that he raped her. Ashley did not provide further specifics. Rizzo testified that he did not find circumstances to believe Timothy was abusive toward Ashley. However, he stated that he was concerned about Ashley's allegations regarding her father.

Rizzo testified that from what he had witnessed, Timothy and Angela were not able to work together for Ashley's benefit. Rizzo testified that he believed both parents should have a relationship with their children, but if one parent is abusive and physically or emotionally dangerous, then it is another issue. Rizzo recommended that Ashley, Angela, and Timothy participate in the Family Bridges program, an intensive therapeutic program designed to break through barriers and help rebuild the relationships between parents and child. They did not participate in this program. Rizzo referred Ashley to Boys Town in mid-August 2012. Ashley then saw Dr. Greg Snyder from mid-September 2012 until mid-November 2013.

Ashley also was treated by Dr. Jane Dahlke, a licensed psychiatrist, on a monthly basis starting in July 2012. Dahlke diagnosed Ashley with unspecified bipolar and related disorder, generalized anxiety disorder, and a possibility of attention deficit hyperactive disorder. Ashley was treated with several medications prescribed by Dahlke, and Ashley continued to see other counselors for therapy sessions. Dahlke testified that shortly before trial, Ashley had told her that she would kill herself if she had unsupervised time with her father. Dahlke stated that she did not see Ashley as suicidal, and she felt Ashley was making progress with her self-esteem, confidence, and appearance.

Dahlke recommended continuing psychiatric treatment of the type Ashley was already receiving, and recommended against Ashley being "forced to spend parenting time with her father." Dahlke testified that Ashley's relationship with Timothy was "presently irreparable" but stated that the relationship could potentially be mended in the future.

Ashley began seeing Dr. Theodore DeLaet in December 2013 or January 2014. At that time, Ashley was diagnosed with mood disorder, unspecified or not otherwise specified, disruptive behavior disorder, and cannabis abuse. DeLaet testified that Ashley had attended six sessions with Timothy, and one session with both parents. Ashley left without completing the session on at least one occasion, and stated that if Timothy did not admit to sexually abusing her, then there was nothing further for her to talk about. Ashley and Angela were given the opportunity to report the allegations to Child Protective Services and they declined.

DeLaet testified that he believes co-parenting is important, and that the parents in this case had a high-conflict relationship. He stated that it appeared the conflict between the parents led Ashley to pick a side which contributed to her ongoing conflict with her father. Ashley was discharged on March 3, 2014. At that time, DeLaet's diagnoses were unspecified mood disorder, parent-child relationship problem, disruptive behavior disorder with a rule out of conduct disorder, and cannabis abuse. He recommended that Ashley continue taking her psychiatric medications and her treatment with Dahlke. He also recommended continued individual counseling or psychotherapy and family counseling.

Dr. Kirk Newring evaluated Ashley in January and February 2014, pursuant to the trial court's order. He recommended that Ashley and Timothy continue with family counseling with DeLaet. He suggested that Ashley may benefit from an approach called Acceptance Commitment Therapy (ACT). Angela was given the names of two providers of the therapy. Timothy told Angela that he was told that ACT does not work and he did not agree with either of the recommended providers. Angela testified that she did not agree with Timothy's suggested providers because they did not address Ashley's use of drugs, and because she did not want Ashley to enroll in treatment outside of Nebraska.

Timothy testified that he had been married to Brenda K. for five years at the time of trial. Brenda has three children, ages 20, 17, and 15 and they all reside with Timothy and Brenda at least part of the time. Timothy testified that prior to April 2012, his relationship with Ashley was great. The last time he spoke to Ashley prior to the no contact order was on April 20, 2012. He said he saw James on the news saying he was the president of a gay, lesbian, and transgender club at Millard West High School and claiming the school was discriminating against the club. He called Ashley to find out what was going on and Ashley hung up the phone. The next time he spoke with Ashley was in Rizzo's office in July 2012. Ashley came to the session, read a letter outlining issues as she saw them, and left the room. Timothy testified that this was the first time he had heard any accusations of abuse from Ashley.

Timothy testified that he saw Ashley briefly at his daughter, Brittinie's wedding and rehearsal in September 2012. He stated that Ashley's attitude toward him appeared to be normal, but they said very little to one another on those days.

At trial, Timothy reported that he would like to participate in an intensive treatment program such as Family Bridges. He also proposed that he receive at least a 90-day custody order allowing for the time to enroll Ashley in the program and for completion of the program. During that time, he alone would have access to Ashley under the supervision of professionals. He stated that this suggestion was not to keep Ashley from Angela, it would be to reconnect with Ashley because he felt she had been alienated from him.

Brenda testified that she noticed a change in Ashley's behavior approximately six months prior to the suspension of Timothy's visitation with Ashley. Brenda said she noticed that Ashley started hanging out with questionable friends, wearing heavy makeup, and dressing in a "risky" manner. Brenda testified that she had never witnessed Timothy using physical discipline or behaving toward Ashley in an inappropriate manner.

Ashley testified that she was bullied starting in 6th grade, and it continued through the most recent school year. She testified that she had just finished her junior year at Millard West High School. Ashley admitted she had used drugs from August 2013 to November 2013. She also

admitted to selling drugs "a little bit." She testified that her grades had declined during the previous school year, but stated that her medication caused her to become sleepy during school hours.

Ashley testified that she was very comfortable in her mother's home and she felt unsafe in her father's presence. Ashley described her relationship with Timothy as abusive, and stated that she feared him. She testified that she was admitted to Immanuel because she wanted to kill herself, and she could no longer handle her father's abuse. She stated that Timothy had abused her "physically, mentally, sexually," and she did not want her brother to leave for college and leave her alone with her father. Ashley testified that she could recall instances when Timothy choked her, threw her across the floor, and called her names. She also testified that he had touched her sexually when she was 7 or 8 years old. When asked how she felt about being required to have unsupervised visits with her father, she stated "I would kill myself before that would happen."

Ashley's allegations of sexual abuse were investigated in April 2014 by Brenda Wheeler, Deputy Sheriff for Douglas County. Wheeler testified that upon completion of her investigation she did not recommend criminal charges or any further action because she determined there was not enough evidence to proceed with a warrant. Timothy's employer also investigated Ashley's allegations and cleared him, and Timothy denied that he had ever abused Ashley.

The trial court found there was no credible evidence to establish that Timothy is an unfit parent, and that Ashley's allegations were either untrue or greatly exaggerated. The court found that both parents are and have always been loving and caring parents. However, the court also found that Ashley suffers from mental problems and her fears are real to her. The court considered the recommendations offered by Ashley's treating psychologists and found there had been a material change of circumstances since the time of the original decree, and that those changes necessitated a change in custody.

The court found it was not in Ashley's best interests to have any court-ordered parenting time, supervised or unsupervised, with her father. The court also found it was in Ashley's best interests that Angela be awarded sole legal and physical custody. This award did not affect either party's access to Ashley's education and medical records. The court stated that nothing in its order "should be construed as not allowing Ashley, if she chooses, to initiate parenting time with her father."

The trial court made a determination with regard to the outstanding bills each party asserted the other owed to them, and amended the decree to include a child support worksheet based on a sole custody calculation. Timothy was ordered to pay child support in the amount of $873 per month, in accordance with the Nebraska Child Support Guidelines, and he was ordered to provide health insurance for Ashley. The court also vacated the provision that the parties would divide costs equally on a monthly basis.

ASSIGNMENTS OF ERROR

Timothy assigns, consolidated and restated, that the district court erred in not providing for court-ordered parenting time and in modifying the custody order and awarding Angela sole legal and physical custody. He also asserts the trial court effectively terminated his parental rights without following the proper procedure, and the court failed to create an appropriate parenting plan.

STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Garza v. Garza,* 288 Neb. 213, 846 N.W.2d 626 (2014).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Kibler v. Kibler,* 287 Neb. 1027, 845 N.W.2d 585 (2014).

ANALYSIS

*Custody of Minor Child.*

Timothy asserts there was no material change in circumstances justifying a change from joint custody shared by both parents, to sole custody with Angela, as there was no showing that he was an unfit parent. However, the court is not required to find one party to be unfit before modifying custody if the evidence shows that modification is in the best interests of the minor child. Ordinarily custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Adams v. Adams,* 13 Neb. App. 276, 691 N.W.2d 541 (2005). A material change in circumstances means the occurrence of something which, had it been known at the time of the original decree, would have resulted in a different outcome. *Id.*

Child custody and visitation determinations are matters initially entrusted to the discretion of the trial court and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Coffey v. Coffey,* 11 Neb. App. 788, 661 N.W.2d 327 (2003).

The Parenting Act in Neb. Rev. Stat. § 43-2929(1)(Cum. Supp. 2014) requires that a parenting plan serve the best interests of the child. The best interests include a parenting arrangement and parenting plan which provides for a child's safety, emotional growth, health, stability, and physical care with regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2014). The statutes also provide that a court shall determine whether it is in the best interests of the child for the parents to maintain continued communications with each other and to make joint decisions in performing parenting functions as are necessary for the care and healthy development of the child. § 43-2923(4).

Courts may consider multiple factors in determining custody and parenting arrangements including: (1) the relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; (2) the desires and wishes of the minor child; (3) the general health, welfare and social behavior of the minor child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or domestic intimate partner abuse. § 43-2923 (6)

The trial court in this case heard evidence from both parties; from the minor child, Ashley; and from Ashley's treating physicians. The court considered Ashley's mental health history, her reports of fear and anxiety directed toward her father, and her desire to remain in the sole custody of her mother. The court also reviewed Ashley's allegations that her father abused her, and found that they were either untrue or greatly exaggerated. Despite that finding, it was clear from the

record that Ashley was not comfortable, and did not feel safe in her father's presence. She had previously stated to healthcare providers that if she were forced to see her father she would kill herself, and she reiterated that sentiment in court. The court ultimately determined that, though both parties were fit, loving parents, that it was in Ashley's best interests to modify the decree and award sole legal and physical custody to Angela.

Our review of the evidence shows there has been a change of circumstances and the parties are no longer able to communicate effectively for Ashley's benefit. They have shown they are unable to agree on the proper types of treatment, resulting in delays in implementing the recommendations of Ashley's current healthcare providers.

Ashley's mental health has also declined. In the years since the 2006 modification order, Ashley has been diagnosed with severe depression, anxiety, suicidal ideations, and other mental health concerns. At least some of Ashley's fears and concerns are directed toward her father and her allegations that he has abused her physically, emotionally, and sexually. Ashley testified that her life is "a lot better" when she does not have contact with her father.

Angela filed the current action in April 2012 because Ashley's mental health had declined, Ashley's relationship with her father had deteriorated, and she was unable to work with Timothy to effectively address Ashley's care. Ashley was hospitalized for suicidal ideations, and she stated "I couldn't handle the abuse from my father anymore." At the time of trial, Ashley was 17 years old and testified that she was completely comfortable in Angela's home and she did not want to be forced to spend time with Timothy.

It appears that both parties are willing and able to provide a home for Ashley, and can both provide for her physical care and educational needs. However, given Ashley's stated preference, and her apparent, intense fear of her father, we find the trial court did not err in determining a material change of circumstances had occurred and a change of custody was in Ashley's best interests.

Timothy asserts the trial court's decision should be reversed because the trial court "specifically found that 'After listening to the evidence, there's no question in the court's mind that [Mr. K.] is not a fit and proper parent as to Ashley.' " Despite making this statement at trial on June 19, 2014, the court specifically found in its order, filed June 24, that "there is no credible evidence to establish Defendant is an unfit parent."

The court's statement at trial was not a formal finding, and is not grounds for reversal, especially after stating in the final order that Timothy was a fit parent. It appears the trial court reviewed the evidence and reconsidered the statement that Timothy was unfit, or that the court simply meant that Timothy appeared to be unfit only *as to Ashley*, given the evidence that was provided regarding their relationship at that time. Timothy's assertion that this statement alone constitutes grounds for reversal of the court's determination is without merit.

*Court-Ordered Parenting Time.*

Timothy asserts the trial court erred in failing to award him visitation with Ashley, and failed to create a parenting plan setting forth the terms for his parenting time with Ashley. Visitation relates to continuing and fostering the normal parental relationship of the noncustodial parent with the minor child of a marriage which has been legally dissolved. *Walters v. Walters,* 12 Neb. App. 340, 673, N.W.2d 585 (2004). The best interests of the child or children are primary

and paramount considerations in determining and modifying visitation rights. *Fine v. Fine,* 261 Neb. 836, 626 N.W.2d 526 (2001).

The record shows Ashley represented to healthcare providers that she is no longer comfortable in her father's presence. She testified that she would kill herself if she was forced to spend unsupervised time with her father, and there was no indication that anyone coached Ashley in that testimony. Ashley and Timothy both testified regarding their relationship, and there was testimony from healthcare providers that the relationship was currently irreparable. Timothy has expressed a desire to repair his relationship with Ashley.

When the evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Edwards v. Edwards,* 16 Neb. App. 297, 744 N.W.2d 243 (2008). Despite finding that Timothy is a fit parent, the trial court found that court-ordered visitation was not in Ashley's best interests at the present time. Upon our review of the evidence, we find the trial court did not abuse its discretion in reaching that determination.

Having determined that the trial court did not err in finding court-ordered visitation is not in Ashley's best interests, we also find that the trial court did not err by not providing a parenting plan setting forth the "times and terms for Appellant's parenting time with the minor child."

*Delegation of Authority.*

Timothy also asserts the trial court improperly delegated its authority to Ashley to determine the time and circumstances when parenting time with Timothy would take place. Timothy refers to *Mark J. v. Darla B.,* 21 Neb. App. 770, 842 N.W.2d 832 (2014), in which the district court modified the dissolution decree, terminating the mother's visitation with the child unless the child wished to have visitation, at which time it would be allowed at the father's discretion. This court stated that "it is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests. This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties or by third parties. *Id.*

In *Mark J. v. Darla B., supra,* we held that it was an abuse of discretion to allow a 13-year-old child to decide whether she wanted contact or parenting time with her mother, subject to the custodial father's discretion. This court remanded the case for the appointment of a guardian ad litem to assist the child in determining matters related to whether or not it was in her best interests to renew visitation with the non-custodial parent.

Although in the present case the custodial mother was not given discretionary control over Ashley's wishes, consistent with our discussion of the trial court's duty contained in *Mark J. v. Darla B., supra,* leaving the decision of parenting time in the hands of a minor, even a 17-year-old, is an inappropriate delegation of the court's duty. We certainly understand why the district court made this decision in light of the evidence offered, notably, the concerns contained in the record and also reiterated at oral argument to this court regarding Ashley's serious mental health issues. As discussed earlier, because of these concerns, we found no abuse of discretion in the court's decision to refrain from entering a mandated parenting schedule. However, the district court's order left any possibility of parenting time solely in the hands of a minor child, and such a delegation is an abuse of discretion. Unfortunately, based on the record before us, it does not

appear that either party asked the district court to appoint a guardian ad litem for Ashley; a guardian ad litem's involvement in the case would allow for the protection of Ashley's mental health issues as balanced against the preservation of some kind of relationship with her father, if that it is possible.

A guardian ad litem's duties are to investigate the facts and learn where the welfare of his or her ward lies and to report such facts to the appointing court. *Betz v. Betz,* 254 Neb. 341, 575 N.W.2d 406 (1998). Though not requested by the parties, it was within the trial court's discretion, on its own motion, to appoint a guardian ad litem for Ashley. See *McCaul v. McCaul*, 17 Neb. App. 801, 771 N.W.2d 222 (2009), *Peterson v. Peterson*, 239 Neb. 113, 474 N.W.2d 862 (1991).

Therefore, we remand this matter to the district court for the purpose of holding a hearing within 30 days of the mandate for entry of an order in conformity with this opinion. We order that Ashley be appointed a guardian ad litem to assist her in the future with her mental health issues and her relationship with her father, and we order the trial court to make a determination regarding how the guardian ad litem is to be paid based upon the financial resources of the parties.

*Termination of Parental Rights.*

Timothy asserts that the trial court "effectively terminated Appellant's parental rights without affording him the procedure set forth in Nebraska Statutes." He asserts the trial court failed to conduct the appropriate proceedings before terminating his rights and the case should have been transferred to juvenile court to consider the issue.

Upon our review of the record, we find no evidence to support an assertion that the trial court terminated Timothy's parental rights. As previously discussed, the trial court awarded sole legal and physical custody to Angela, and found court-ordered parenting time with Timothy was not in Ashley's best interests. However, the court also found that the other provisions in the decree would remain in full effect. These provisions included findings that the parties should discuss health, medical, and school-related problems and decisions, and any behavioral or disciplinary issues. Both parties' names were to appear on all school and medical records and each person would regain the right to full access to any records and pertinent information. The restrictions in place in this case, were motivated by Ashley's best interests and specifically provide that Timothy is not restricted from seeing Ashley if she initiates contact.

A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights. *In re Interest of Justin H. v. Tonya S.,* 18 Neb. App. 718, 791 N.W.2d 765 (2010). A parent whose rights were terminated with respect to a minor child would not retain the rights Timothy has. Upon our review, we find this case did not result in a termination of Timothy's parental rights and a transfer to juvenile court was not required. We find this assignment of error is without merit.

*Parenting Plan.*

Timothy asserts the district court failed to create a parenting plan pursuant to Neb. Rev. Stat. § 43-2929. When the parties' marriage was dissolved in 2003, the court also adopted the parenting plan attached to the dissolution decree. The parenting plan set the schedule for parenting time and addressed related parenting issues based upon joint legal and physical custody. The order in the current action, dated June 24, 2014, amended the custody provision, awarding sole legal and

physical custody of Ashley to Angela, and amended several other provisions from the original decree. The court further stated that "all other provisions of the June 27, 2003 decree not modified by this order shall remain in full force and effect."

Timothy asserts the trial court did not provide a plan to address the child's "safety, emotional growth, health, stability, and physical care, and regular and continuous school attendance and progress for school-age children." However, as the trial court amended the award of custody, it follows that Angela, as sole custodian, would be responsible for the direction of Ashley's psychiatric and psychological care, medical care, physical care, and school attendance. Nebraska courts have previously determined that a custodial parent may direct a child's care and education. See *Doolittle v. Doolittle,* 3 Neb. App. 230, 525 N.W.2d 245 (1994).

Upon our review of the record, it is clear the trial court adopted the parenting plan of the parties as modified by the June 24, 2014 order, and the court was not required to create a new parenting plan. We find this assignment of error is without merit.

## CONCLUSION

We affirm all aspects of the district court's order except for that portion delegating to Ashley the discretion to determine parenting time; we reverse that portion and remand for the appointment of a guardian ad litem.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.